IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DOMONIQUE NATASHA BRIGGS and SAMAR HASSAN**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>-against-<br><br>**PNC FINANCIAL SERVICES GROUP, INC., and PNC BANK, N.A.,**<br><br>Defendants. | No.<br><br>Judge<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Domonique Natasha Briggs and Samar Hassan (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege as follows:

### NATURE OF THE ACTION

1. This lawsuit seeks to recover overtime compensation for Plaintiffs and their similarly situated co-workers who have worked as salaried Assistant Branch Managers ("ABMs") for PNC Financial Services Group, Inc., and PNC Bank, N.A. (collectively, "PNC" or "Defendants") anywhere in the United States.

2. PNC is one of the ten largest banks in the United States with total assets of approximately $334 billion.

3. PNC operates approximately 2,700 branches in nineteen states and the District of Columbia, including Illinois, which provide deposit, lending, cash management, and investment services.

4. ABMs perform a variety of sales, customer service, and operations duties including, but not limited to: providing customer service to bank customers, including handling deposits, opening and closing accounts, and resolving customer issues; selling financial products and services; initiating sales by referring customers to other PNC specialists, such as financial advisors and mortgage officers; running reports; and conducting regulatory and security audits.

5. The primary duties of an ABM are non-exempt, including: working as a bank teller, working as a sales consultant, performing customer service tasks, and doing operations work, such as conducting routine audits and reporting. ABMs spend the vast majority of their time performing these sale and customer service responsibilities, which are similar to the duties of non-exempt, hourly-paid tellers and financial sales consultants.

6. ABMs are required to perform this non-exempt work in order to provide PNC customers with the individualized services that PNC requires its employees to deliver throughout its branches' long operating hours.

7. PNC classifies ABMs as exempt from federal and state overtime provisions based on uniform criteria. Therefore, PNC does not pay ABMs overtime wages when they work in excess of 40 hours per week.

8. The primary duties of ABMs do not vary among PNC's branches.

9. The primary duties of the ABM position do not fall under any of the exemptions under federal or state overtime laws.

10. PNC regularly requires ABMs to work in excess of 40 hours per week.

11. By the conduct described in this Collective and Class Action Complaint, PNC has violated the Fair Labor Standards Act ("FLSA"), as well as Illinois state law, by failing to pay

ABMs, including Plaintiffs, the overtime wages they have earned and to which they are entitled by law.

12. Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of PNC who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy PNC's violations of the wage and hour provisions of the FLSA that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

13. Plaintiff Domonique Natasha Briggs (the "Illinois Plaintiff") also brings this action on behalf of herself and similarly situated current and former ABMs who work or have worked for PNC in Illinois pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1, *et seq.* ("IMWL").

## THE PARTIES

*Plaintiffs*

### *Plaintiff Domonique Natasha Briggs*

14. Plaintiff Domonique Natasha Briggs is an adult individual who is a resident of Chicago, Illinois.

15. Plaintiff Briggs was employed by PNC from approximately August 2012 to May 2013. During this period, Plaintiff Briggs worked as an ABM in one of PNC's bank branches in Chicago, Illinois.

16. Pursuant to PNC's policy, pattern, and/or practice, Plaintiff Briggs worked more than 40 hours in more than one workweek, but was not compensated for overtime hours worked.

17. Throughout her employment with PNC, Plaintiff Briggs worked most weeks for PNC from approximately 7:30 a.m. or 9:00 a.m. to 6:15 p.m. on Mondays through Fridays, and

from approximately 7:30 a.m. to 2:00 p.m. on two to three Saturdays per month. In general, she worked approximately between 45 and 60 hours per week.

18. Throughout her employment with PNC, Plaintiff Briggs regularly worked through her lunch breaks.

19. Plaintiff Briggs is a covered employee within the meaning of the FLSA and the IMWL.

20. A written consent form for Plaintiff Briggs is attached hereto as **Exhibit A**.

*Plaintiff Samar Hassan*

21. Plaintiff Samar Hassan is an adult individual who is a resident of Alexandria, Virginia.

22. Plaintiff Hassan was employed by PNC from approximately June 2011 to March 2013. During this period, she worked as an ABM in one of PNC's bank branches located in Oakton, Virginia.

23. Pursuant to PNC's policy, pattern, and/or practice, Plaintiff Hassan worked more than 40 hours in more than one workweek, but was not compensated for overtime hours worked.

24. Throughout her employment with PNC, Plaintiff Hassan worked most weeks for PNC from approximately 8:00 a.m. or 8:30 a.m. to approximately 6:00 p.m. or 7:00 p.m. on Mondays through Fridays, and many Saturdays from 9:00 a.m. to 2:00 p.m. In general, she worked approximately between 50 and 55 hours per week.

25. Throughout her employment with PNC, Plaintiff Hassan regularly worked through her lunch breaks.

26. Plaintiff Hassan is a covered employee within the meaning of the FLSA.

27. A written consent form for Plaintiff Hassan is attached hereto as **Exhibit B**.

*Defendants*

### *PNC Financial Services Group, Inc.*

28. PNC Financial Services Group, Inc., is the holding company for PNC Bank, N.A.

29. It is incorporated in Pennsylvania and maintains its corporate headquarters in Pittsburg, Pennsylvania.

30. Throughout the relevant period, PNC Financial Services Group, Inc., employed Plaintiffs and similarly situated employees within the meaning of the FLSA and Illinois law. PNC Financial Services Group, Inc. has had substantial control over Plaintiffs' working conditions and the unlawful policies and practices alleged herein.

31. PNC Financial Services Group, Inc., is a covered employer within the meaning of the FLSA and Illinois law, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

32. At all times relevant, PNC Financial Services Group, Inc., maintained control, oversight and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

33. PNC Financial Services Group, Inc., applies the same employment policies, practices, and procedures to all ABMs.

34. At all times relevant, PNC Financial Services Group, Inc.'s annual gross volume of sales made or business done was not less than $500,000.

### *PNC Bank, N.A.*

35. PNC Bank, N.A. is a wholly owned subsidiary of PNC Financial Services Group, Inc.

36. PNC Bank, N.A. is incorporated in Pennsylvania and maintains its corporate

headquarters in Pittsburg, Pennsylvania.

37. Throughout the relevant period, PNC Bank, N.A. employed Plaintiffs and similarly situated employees within the meaning of the FLSA and Illinois law. PNC Bank, N.A. has had substantial control over Plaintiffs' working conditions and the unlawful policies and practices alleged herein.

38. PNC Bank, N.A. is a covered employer within the meaning of the FLSA and Illinois law, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

39. At all times relevant, PNC Bank, N.A. has maintained control, oversight and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

40. PNC Bank, N.A. applies the same employment policies, practices, and procedures to all ABMs.

41. At all times relevant, PNC Bank N.A.'s annual gross volume of sales made or business done was not less than $500,000.

42. PNC Bank, N.A. is the entity listed on Plaintiffs' W-2s.

## **JURISDICTION AND VENUE**

43. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

44. In addition, the Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

45. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

46. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants are subject to personal jurisdiction in Illinois.

## COLLECTIVE-WIDE FACTUAL ALLEGATIONS

47. Plaintiffs bring the First Cause of Action, pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for PNC as ABMs at any branch location in the United States on or after November 19, 2012, who elect to opt-in to this action (the "FLSA Collective").

48. All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by PNC, and/or PNC has been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

49. As part of its regular business practice, PNC has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This pattern, practice, and/or policy includes, but is not limited to:

   a. willfully failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours per workweek;

   b. willfully misclassifying Plaintiffs and the members of the FLSA Collective as exempt from the protections of the FLSA; and

   c. willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of PNC.

50. PNC is aware or should have been aware that federal law requires and required Defendants to pay employees performing non-exempt duties, including Plaintiffs and members of the FLSA Collective, an overtime premium for hours worked in excess of 40 per workweek.

51. Plaintiffs and the FLSA Collective all perform or performed the same primary duties.

52. PNC's unlawful conduct has been widespread, repeated, and consistent.

## ILLINOIS CLASS ACTION ALLEGATIONS

53. The Illinois Plaintiff brings the Second Cause of Action, an IMWL claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all current and former ABMs who worked or have worked at any branch location in Illinois at any time between November 19, 2012, and the date of final judgment in this matter (the "Illinois Class").

54. Excluded from the Illinois Class are Defendants, PNC's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Illinois Class.

55. The members of the Illinois Class are so numerous that joinder of all members is impracticable.

56. Upon information and belief, the size of the Illinois Class is greater than 40 individuals. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number depends are presently within the sole control of PNC.

57. PNC has acted or refused to act on grounds generally applicable to the Illinois Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Illinois Class as a whole.

58. The Second Cause of Action is properly maintainable as a class action under

Federal Rule of Civil Procedure 23(b)(3). Common questions of law and fact exist as to the Illinois Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) whether PNC violated the IMWL;

(b) whether PNC failed to compensate the Illinois Plaintiff and the Illinois Class for hours worked in excess of 40 hours per workweek;

(c) whether PNC misclassified the Illinois Plaintiff and the Illinois Class;

(d) whether PNC's policy of misclassifying the Illinois Plaintiff and the Illinois Class was done willfully or with reckless disregard of the law;

(e) whether PNC failed to keep true and accurate time records for all hours worked by the Illinois Plaintiff and the Illinois Class;

(f) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

(g) the nature and extent of Illinois Class-wide injury and the appropriate measure of damages for the Illinois Class.

59. The claims of the Illinois Plaintiff are typical of the claims of the Illinois Class she seeks to represent.

60. The Illinois Plaintiff and Illinois Class work, or have worked, for PNC as ABMs and have been subjected to PNC's policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week.

61. The Illinois Plaintiff and the Illinois Class enjoy the same statutory rights under the IMWL, including to be paid for all hours worked and to be paid overtime wages. The Illinois Plaintiff and Illinois Class have all sustained similar types of damages as a result of PNC's failure to comply with the IMWL. The Illinois Plaintiff and the Illinois Class have all been injured in that they have been under-compensated due to PNC's common policies, practices, and patterns of conduct. PNC has acted and refused to act on grounds generally applicable to the

Illinois Class, thereby making declaratory relief with respect to the Illinois Class appropriate.

62. The Illinois Plaintiff will fairly and adequately represent and protect the interests of the Illinois Class. The Illinois Plaintiff understands that, as a class representative, she assumes a fiduciary responsibility to the Illinois Class to represent its interests fairly and adequately. The Illinois Plaintiff recognizes that, as a class representative, she must represent and consider the interests of the Illinois Class just as she would represent and consider her own interests. The Illinois Plaintiff understands that, in making decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the interests of the Illinois Class. The Illinois Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. The Illinois Plaintiff understands that, in order to provide adequate representation of the Illinois Class, she must remain informed of developments in litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify, if required, at deposition and trial.

63. The Illinois Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between the Illinois Plaintiff and the Illinois Class.

64. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Illinois Class have been damaged and are entitled to recovery as a result of PNC's violations of the IMWL, as well as their common and uniform policies, practices, and procedures. Although the relative damages

suffered by individual Illinois Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about PNC's practices.

65. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## COMMON FACTUAL ALLEGATIONS

66. Plaintiffs, the members of the FLSA Collective, and the Illinois Class (collectively "Class Members") worked for PNC as ABMs.

67. Throughout their employment with PNC, Plaintiffs and the Class Members consistently worked more than 40 hours per week.

68. PNC was aware that Plaintiffs and the Class Members worked more than 40 hours per workweek, yet PNC failed to pay them any overtime compensation for any of the hours worked over 40 in a workweek.

69. PNC did not keep accurate records of hours worked by Plaintiffs or the Class Members. That is, although Plaintiffs and the Class Members routinely worked more than 40 hours, PNC did not record those hours.

70. Plaintiffs and the Class Members' primary duties were not management.

71. Plaintiffs and the Class Members' primary duties were non-exempt hourly work, including serving customers and selling bank products and services, as well as performing operations work, such as conducting routine audits and reporting. Plaintiffs and the Class Members spent the vast majority of their time performing these non-exempt duties. These duties are similar to the duties performed by hourly-paid tellers and sales consultants, who are routinely classified by PNC as non-

exempt.

72. Plaintiffs and the Class Members were required to meet sales revenue goals that determined whether they were eligible to receive bonuses. PNC evaluated Plaintiffs and the Class Members' job performance, in part, based on their sales performance.

73. Plaintiffs and the Class Members were closely supervised by their Branch Managers. PNC Branch Managers spent the vast majority of each day in their branches and were responsible for the overall performance of the branches and for coaching and developing branch employees.

74. Plaintiffs and the Class Members did not exercise any meaningful degree of independent discretion with respect to the exercise of their duties, and were required to follow the policies, practices, and procedures set by PNC and its Branch Managers, as well as state and federal banking regulations. Plaintiffs and the Class Members did not have any independent discretionary authority to deviate from these policies, practices, and procedures.

75. For example, Plaintiffs and the Class Members did not have authority to (a) create or implement management policies, practices, and procedures for PNC; (b) commit PNC in matters having significant financial impact; (c) set employee wages; (d) hire, fire, or promote employees; (e) perform performance evaluations that altered the condition of employment for employees; or (f) otherwise impose discipline on branch employees.

## **FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

76. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

77. PNC has engaged in a widespread pattern and practice of violating the FLSA, as described in this Collective and Class Action Complaint.

78. Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

79. At all relevant times, Plaintiffs and other similarly situated current and former ABMs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

80. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to PNC.

81. PNC is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

82. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

83. PNC failed to pay Plaintiffs and other similarly situated current and former employees the overtime wages to which they were entitled under the FLSA.

84. PNC's violations of the FLSA, as described in this Complaint, have been willful and intentional. PNC failed to make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former employees.

85. Because PNC's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

86. As a result of PNC's willful violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

87. As a result of PNC's unlawful acts, Plaintiffs and other similarly situated current and former employees have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(IMWL: Unpaid Overtime Wages)**
**(Brought on Behalf of the Illinois Plaintiff and the Illinois Class)**

88. The Illinois Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

89. At all times relevant, PNC has been an employer covered by the overtime mandates of the IMWL.

90. At all times relevant, the Illinois Plaintiff and the Illinois Class have been employees within the meaning of the IMWL.

91. PNC engaged in a widespread pattern, policy, and practice of violating the IMWL, as detailed in this Collective and Class Action Complaint.

92. PNC violated the IMWL, in relevant part, by failing to pay the Illinois Plaintiff and the Illinois Class overtime wages as required by the Illinois Wage Laws, including Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/1, *et seq.*

93. PNC failed to pay the Illinois Plaintiff and the Illinois Class overtime for hours worked over forty in a workweek.

94. PNC failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Illinois Plaintiff and the Illinois Class.

95. PNC's violations of the IMWL have been willful and intentional.

96. Due to PNC's violations of the IMWL, the Illinois Plaintiff and the Illinois Class

are entitled to recover from PNC their unpaid overtime wages, reasonable attorneys' fees and costs of the action and additional damages equal to 2% of the amount of their unpaid overtime wages for each month following the date of payment during which such underpayments remain unpaid.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this Collective Action, or that the Court issue such notice, to all members of the FLSA Collective. Such notice should inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit, among other things;

B. Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Certification of the IMWL claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of the Illinois Plaintiff as Class Representative of the Illinois Class and counsel of record as Class Counsel;

E. Issuance of a declaratory judgment that the practices complained of in this Collective and Class Action Complaint are unlawful under the IMWL;

F. Unpaid overtime pay, interest, and other damages and penalties permitted by law pursuant to the IMWL;

G. Pre-judgment interest and post-judgment interest as provided by law;

H. Appropriate equitable and injunctive relief to remedy violations, including, but

not necessarily limited to, an order enjoining PNC from continuing its unlawful practices;

      I.      Reasonable incentive awards for the Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other ABMs, and the risks they are undertaking;

      J.      Attorneys' fees and costs of the action; and,

      K.      Such other injunctive and equitable relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 19, 2015, Chicago, Illinois

                  Respectfully submitted,

                  */s/ Douglas M. Werman*
                  **WERMAN SALAS P.C.**
                  Douglas M. Werman
                  Maureen A. Salas
                  77 West Washington Street, Suite 1402
                  Chicago, IL 60602
                  Telephone: (312) 419-1008
                  Facsimile: (312) 419-1025

                  **OUTTEN & GOLDEN LLP**
                  Justin M. Swartz
                  Christopher McNerney (*pro hac vice* motion forthcoming)
                  Olivia J. Quinto (*pro hac vice* motion forthcoming)
                  3 Park Avenue, 29th Floor
                  New York, New York 10016
                  Telephone: (212) 245-1000
                  Facsimile: (212) 977-4005

                  *and*

                  Paul W. Mollica
                  203 North LaSalle Street, Suite 2100
                  Chicago, IL 60601
                  Telephone: (312) 924-4888
                  Facsimile: (646) 509-2075

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (*pro hac vice* motion forthcoming)
Camar Jones (*pro hac vice* motion forthcoming)
Susan Stern (*pro hac vice* motion forthcoming)
1515 S. Federal Highway
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831