## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DOMONIQUE NATASHA BRIGGS and
SAMAR HASSAN, on behalf of themselves and
all others similarly situated,

Plaintiffs,

   -against-

PNC FINANCIAL SERVICES GROUP, INC.
and PNC BANK, N.A.,

      Defendants.

No. 15 Civ. 10447

Hon. Amy J. St. Eve

### INDEX OF EXHIBITS TO
### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
### REGARDING THE DEPOSITIONS OF PLAINTIFFS
### DOMONIQUE BRIGGS AND SAMAR HASSAN

Notice of Videotaped Deposition of Plaintiff Samar Hassan and Plaintiff Domonique Briggs ....A

Email from Susan Stern to Douglas M. Werman, dated January 11, 2016 ...................................B

Transcript of Proceedings for October 6, 2011 hearing in *O'Toole v. Sears, Roebuck & Co.* .......C

Transcript of Proceedings for October 26, 2011 hearing in *O'Toole v. Sears, Roebuck & Co.* .....D

# EXHIBIT A

# Morgan Lewis

**Kevin F. Gaffney**
Associate
+1.312.324.1138
kgaffney@morganlewis.com

January 6, 2016

**VIA FACSIMILE AND FEDEX**

Christopher McNerney
Olivia Jardinado Quinto-Reyes
Justin Mitchell Swartz
Paul William Mollica
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016

Douglas M. Werman
Maureen Ann Salas
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602

Gregg L. Shavitz
Camar Ricardo Jones
Susan H. Stern
Shavitz Law Group, P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432

Re: *Domonique Natasha Briggs and Samar Hassan v. PNC Financial Services Group, Inc. and PNC Bank*
Court No: 15-cv-10447

Dear Counsel:

Enclosed please find our Notices of Videotaped Depositions of Plaintiffs Domonique Natasha Briggs and Samar Hassan.

Sincerely,

Kevin F. Gaffney

KFG/aa
Enclosures

**Morgan, Lewis & Bockius LLP**

77 West Wacker Drive
Chicago, IL 60601-5094
United States

**T** +1.312.324.1000
**F** +1.312.324.1001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DOMONIQUE NATASHA BRIGGS and
SAMAR HASSAN, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

    v.

PNC FINANCIAL SERVICES GROUP, INC.,
and PNC BANK, N.A.,

          Defendants.

Case No.  15 CV 10447

Honorable Amy J. St. Eve

## NOTICE OF VIDEOTAPED DEPOSITION OF

## PLAINTIFF SAMAR HASSAN

**TO:**

Christopher McNerney
Olivia Jardinado Quinto-Reyes
Justin Mitchell Swartz
Paul William Mollica
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY  10016
(212) 245-1000

*Attorneys for Plaintiffs*

Gregg L. Shavitz
Camar Ricardo Jones
Susan H. Stern
Shavitz Law Group, P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432
(561) 447-8888

*Attorneys for Plaintiffs*

Douglas M. Werman
Maureen Ann Salas
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

*Attorney for Plaintiffs*

PLEASE TAKE NOTICE that Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. will take the deposition of plaintiff Samar Hassan on Wednesday, January 27, 2016 at 9:30 a.m., upon oral examination and pursuant to the Federal Rules of Civil Procedure, before a Notary Public or before any other officer duly authorized to administer oaths, at the law office of Morgan, Lewis & Bockius LLP, 77 West Wacker Drive, Chicago, Illinois 60601. The deposition will be recorded by stenographic and video recorded means and continue day-to-day thereafter until completion.

Dated: January 6, 2016

Respectfully submitted,

PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A.

By: */s/ Kevin F. Gaffney*
     One of Their Attorneys

Sari M. Alamuddin
Kevin F. Gaffney
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Dr.
Fifth Floor
Chicago, IL 60601
Tel. 312.324.1000
Fax 312.324.1001
salamuddin@morganlewis.com
kgaffney@morganlewis.com

Sarah E. Bouchard (*pro hac vice*)
Lauren E. Marzullo (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.  215.963.5000
Fax.  215.963.5001
sbouchard@morganlewis.com
lmarzullo@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Kevin Gaffney, an attorney, certify that I served a copy of the foregoing NOTICE OF

VIDEOTAPED DEPOSITION OF SAMAR HASSAN on the following counsel of record via e-

mail and Federal Express on January 6, 2016:

Christopher McNerney (cmcnerney@outtengolden.com)
Olivia Jardinado Quinto-Reyes (ojq@outtengolden.com)
Justin Mitchell Swartz (jms@outtengolden.com)
Paul William Mollica (pwmollica@outtengolden.com)

Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

Douglas M. Werman (dwerman@flsalaw.com)
Maureen Ann Salas (msalas@flsalaw.com)

Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Gregg L. Shavitz (gshavitz@shavitzlaw.com)
Camar Ricardo Jones (cjones@shavitzlaw.com)
Susan H. Stern (sstern@shavitzlaw.com)

Shavitz Law Group, P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432
(561) 447-8888


*/s/ Kevin F. Gaffney*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DOMONIQUE NATASHA BRIGGS and
SAMAR HASSAN, on behalf of themselves
and all others similarly situated,

              Plaintiffs,

      v.

PNC FINANCIAL SERVICES GROUP, INC.,
and PNC BANK, N.A.,

           Defendants.

Case No. 15 CV 10447

Honorable Amy J. St. Eve

## NOTICE OF VIDEOTAPED DEPOSITION OF

## PLAINTIFF DOMONIQUE NATASHA BRIGGS

**TO:**

Christopher McNerney
Olivia Jardinado Quinto-Reyes
Justin Mitchell Swartz
Paul William Mollica
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

*Attorneys for Plaintiffs*

Gregg L. Shavitz
Camar Ricardo Jones
Susan H. Stern
Shavitz Law Group, P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432
(561) 447-8888

*Attorneys for Plaintiffs*

Douglas M. Werman
Maureen Ann Salas
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

*Attorney for Plaintiffs*

PLEASE TAKE NOTICE that Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. will take the deposition of plaintiff Domonique Natasha Briggs on Monday, January 25, 2016 at 9:30 a.m., upon oral examination and pursuant to the Federal Rules of Civil Procedure, before a Notary Public or before any other officer duly authorized to administer oaths, at the law office of Morgan, Lewis & Bockius LLP, 77 West Wacker Drive, Chicago, Illinois 60601. The deposition will be recorded by stenographic and video recorded means and continue day-to-day thereafter until completion.

Dated: January 6, 2016

Respectfully submitted,

PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A.


By: */s/ Kevin F. Gaffney*
One of Their Attorneys

Sari M. Alamuddin
Kevin F. Gaffney
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Dr.
Fifth Floor
Chicago, IL 60601
Tel. 312.324.1000
Fax 312.324.1001
salamuddin@morganlewis.com
kgaffney@morganlewis.com

Sarah E. Bouchard (*pro hac vice*)
Lauren E. Marzullo (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.  215.963.5000
Fax.  215.963.5001
sbouchard@morganlewis.com
lmarzullo@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Kevin Gaffney, an attorney, certify that I served a copy of the foregoing NOTICE OF

VIDEOTAPED DEPOSITION OF DOMONIQUE NATASHA BRIGGS on the following

counsel of record via e-mail and Federal Express on January 6, 2016:

Christopher McNerney (cmcnerney@outtengolden.com)
Olivia Jardinado Quinto-Reyes (ojq@outtengolden.com)
Justin Mitchell Swartz (jms@outtengolden.com)
Paul William Mollica (pwmollica@outtengolden.com)

Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

Douglas M. Werman (dwerman@flsalaw.com)
Maureen Ann Salas (msalas@flsalaw.com)
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Gregg L. Shavitz (gshavitz@shavitzlaw.com)
Camar Ricardo Jones (cjones@shavitzlaw.com)
Susan H. Stern (sstern@shavitzlaw.com)
Shavitz Law Group, P.A.
1515 South Federal Highway
Suite 404
Boca Raton, FL 33432
(561) 447-8888

/s/ Kevin F. Gaffney

# EXHIBIT B

## Douglas M. Werman

| | |
|---|---|
| **From:** | Susan Stern <sstern@shavitzlaw.com> |
| **Sent:** | Monday, January 11, 2016 10:54 AM |
| **To:** | Douglas M. Werman |
| **Cc:** | Gregg Shavitz; jms@outtengolden.com; Camar Jones; Maureen Salas; McNerney, Christopher (cmcnerney@outtengolden.com); Quinto, Olivia |
| **Subject:** | FW: Briggs v. PNC |
| **Attachments:** | (86049892)_(1)_Briggs_PNC - Markup of Plaintiffs_ Proposed Joint Initial Status Report.DOC |

Doug, can we discuss this and get back to the defendant since this is due today? Also, does anyone else see redlines because I don't.

**Susan H. Stern, Esq.**
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Phone: 561-447-8888
www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you

**From:** Marzullo, Lauren E. [mailto:lmarzullo@morganlewis.com]
**Sent:** Friday, January 08, 2016 1:11 PM
**To:** Douglas M. Werman; Susan Stern
**Cc:** Alamuddin, Sari M.; Gaffney, Kevin F.; Bouchard, Sarah E.; Justin Swartz; Gregg Shavitz; Camar Jones; Maureen Salas
**Subject:** RE: Briggs v. PNC

Doug:

Thank you for following up. Attached is our proposed markup of the report. As the markup reflects, PNC is willing to compromise by seeking only the two named plaintiffs' depositions (per the notices we served on Wednesday) and deferring all other discovery until after a ruling on Plaintiffs' motion for conditional certification. Please let us know if you have any questions or comments.

Thank you,

**Lauren Marzullo**
**Morgan, Lewis & Bockius LLP**
One Oxford Centre Thirty-Second Floor 301 Grant Street | Pittsburgh PA 15219-6401
Direct: 412.560.7407 | Main: 412.560.3300 | Fax: 412.560.7001
lmarzullo@morganlewis.com | www.morganlewis.com
Assistant: Marsha L. Josapak | 412.560.7443 | marsha.josapak@morganlewis.com

1

**From:** Douglas M. Werman [mailto:dwerman@flsalaw.com]
**Sent:** Friday, January 08, 2016 10:03 AM
**To:** Marzullo, Lauren E.; Susan Stern
**Cc:** Alamuddin, Sari M.; Gaffney, Kevin F.; Bouchard, Sarah E.; Justin Swartz; Gregg Shavitz; Camar Jones; Maureen Salas
**Subject:** RE: Briggs v. PNC

Lauren: This is a follow-up to our conference call regarding the status report and conversation about discovery.

Have you spoken further with your client about our dispute over the timing of discovery? Please confirm if a further meet and confer is warranted or if we are at impasse on the issue of discovery prior to Defendant filing its response to Plaintiffs' step one motion for notice.

Please also provide me any proposed changes you have to the status report. The report must be filed on Monday, January 11, 2016. Thanks.

Doug Werman


Douglas M. Werman | Werman Salas P.C.
77 W. Washington | Suite 1402 | Chicago, Il. 60602
312-419-1008 | 312-419-1025 (fax)
email: dwerman@flsalaw.com
website: www.flsalaw.com
twitter: @WermanSalas



**From:** Marzullo, Lauren E. [mailto:lmarzullo@morganlewis.com]
**Sent:** Monday, December 28, 2015 1:46 PM
**To:** Susan Stern <sstern@shavitzlaw.com>; Douglas M. Werman <dwerman@flsalaw.com>
**Cc:** Alamuddin, Sari M. <salamuddin@morganlewis.com>; Gaffney, Kevin F. <kgaffney@morganlewis.com>; Bouchard, Sarah E. <sbouchard@morganlewis.com>; Justin Swartz <JMS@outtengolden.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Camar Jones <cjones@shavitzlaw.com>; Maureen Salas <msalas@flsalaw.com>
**Subject:** RE: Briggs v. PNC

Hi Susan: We can be available on 1/6. Please let us know what time works best for you.

Thank you,

**Lauren Marzullo**
**Morgan, Lewis & Bockius LLP**
One Oxford Centre Thirty-Second Floor 301 Grant Street | Pittsburgh PA 15219-6401
Direct: 412.560.7407 | Main: 412.560.3300 | Fax: 412.560.7001
lmarzullo@morganlewis.com | www.morganlewis.com
Assistant: Marsha L. Josapak | 412.560.7443 | marsha.josapak@morganlewis.com

**From:** Susan Stern [mailto:sstern@shavitzlaw.com]
**Sent:** Thursday, December 24, 2015 12:16 PM
**To:** Marzullo, Lauren E.; Douglas M. Werman
**Cc:** Alamuddin, Sari M.; Gaffney, Kevin F.; Bouchard, Sarah E.; Justin Swartz; Gregg Shavitz; Camar Jones; Maureen Salas
**Subject:** RE: Briggs v. PNC

Hi Lauren,

In light of the holidays, next week just won't work.  We are available on Jan 5 or 6 which should allow us sufficient time to submit by the jan 11 deadline and Plaintiffs can circulate a draft report before our call. Please let us know when on Jan 5 or 6 works for you.

Happy Holidays.


**Susan H. Stern, Esq.**
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida  33432
Phone: 561-447-8888
www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you

**From:** Marzullo, Lauren E. [mailto:lmarzullo@morganlewis.com]
**Sent:** Wednesday, December 23, 2015 4:36 PM
**To:** Douglas M. Werman
**Cc:** Alamuddin, Sari M.; Gaffney, Kevin F.; Bouchard, Sarah E.; Justin Swartz; Gregg Shavitz; Camar Jones; Maureen Salas; Susan Stern
**Subject:** RE: Briggs v. PNC


Doug:

Thank you for the quick response.  We would prefer to schedule the conference sometime next week.  Please let us know availability on your side next week.

Thank you,

**Lauren Marzullo**
**Morgan, Lewis & Bockius LLP**
One Oxford Centre Thirty-Second Floor 301 Grant Street | Pittsburgh PA 15219-6401
Direct: 412.560.7407 | Main: 412.560.3300 | Fax: 412.560.7001
lmarzullo@morganlewis.com | www.morganlewis.com
Assistant: Jami Q. Tanski | 412.560.7406 | jtanski@morganlewis.com

**From:** Douglas M. Werman [mailto:dwerman@flsalaw.com]
**Sent:** Wednesday, December 23, 2015 4:26 PM
**To:** Marzullo, Lauren E.
**Cc:** Alamuddin, Sari M.; Gaffney, Kevin F.; Bouchard, Sarah E.; Justin Swartz; Gregg Shavitz; cjones@shavitzlaw.com; Maureen Salas; sstern@shavitzlaw.com
**Subject:** Re: Briggs v. PNC

In light of the briefing schedule (and my vacation) and knowing this judge, I think the conference can wait until just after the first of the year. If you want to have it next week, let me know and I'll get someone else on our side involved. Otherwise, let's plan on 1/5 or 1/6. Thanks.

On Dec 23, 2015, at 9:51 AM, Marzullo, Lauren E. <lmarzullo@morganlewis.com> wrote:

Doug:

I believe our Rule 26(f) conference is due in this matter.  Will you please let us know plaintiffs' counsel's availability next week for a telephonic conference?

Thank you,

**Lauren Marzullo**
**Morgan, Lewis & Bockius LLP**
One Oxford Centre Thirty-Second Floor 301 Grant Street | Pittsburgh PA 15219-6401
Direct: 412.560.7407 | Main: 412.560.3300 | Fax: 412.560.7001
lmarzullo@morganlewis.com | www.morganlewis.com
Assistant: Jami Q. Tanski | 412.560.7406 | jtanski@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

# EXHIBIT C

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3     ROBERT O'TOOLE, et al.,          )  No. 11 C 4611
                                        )
 4                     Plaintiffs,      )  Chicago, Illinois
                                        )  October 6, 2011
 5                                      )  9:00 o'clock a.m.
                                        )
 6     -vs-                             )
                                        )
 7     SEARS, ROEBUCK & CO.,            )
                                        )
 8                     Defendant.       )

 9
                TRANSCRIPT OF PROCEEDINGS - STATUS
10          BEFORE THE HONORABLE MILTON I. SHADUR

11    APPEARANCES:

12    For the Plaintiffs:     WERMAN LAW OFFICE P.C.
                              77 West Washington Street
13                            Suite 1402
                              Chicago, Illinois 60602
14                            BY:  MR. DOUGLAS M. WERMAN

15    For the Defendant:      LITTLER MENDELSON, P.C.
                              321 North Clark Street
16                            Suite 1000
                              Chicago, Illinois 60654
17                            BY:  MR. JAMES J. OH

18

19

20

21

22

23    Court Reporter:         ROSEMARY SCARPELLI
                              219 South Dearborn Street
24                            Room 2304A
                              Chicago, Illinois  60604
25                            (312) 435-5815
```

1          THE CLERK:  11 C 4611, O'Toole versus Sears

2    Holdings.

3          MR. WERMAN:  Good morning, Judge, Doug Werman,

4    W-E-R-M-A-N, for plaintiffs.

5          MR. OH:  Good morning, your Honor, James Oh, last

6    name spelled O-H, for the defendants.

7          THE COURT:  Good morning.  Well, before I turn to a

8    couple of items that ought to be modified in the submission,

9    let me find out what -- and, by the way, one of them is

10   certainly that the name of the plaintiff -- defendant rather

11   ought to be changed.

12         MR. WERMAN:  Yeah.  And -- yes, Judge.

13         THE COURT:  You know, there was a recent -- as you

14   know, there was a recent change to Sears Roebuck & Company

15   from the holding corporation.

16         MR. WERMAN:  Which is -- I am sorry.

17         THE COURT:  Okay.  Now, but let me ask something

18   about that.  You know, I don't know anything about Sears'

19   internal corporate structuring, but are all of the putative

20   or potential class members employed by Sears Roebuck &

21   Company so that there is no other subsidiary or affiliate

22   that is involved?

23         MR. WERMAN:  Judge, that is what I was going to

24   address.  There has been some further discussions between the

25   parties and there has been agreement that we are going to

1    further amend the complaint to add what we think are the

2    correct corporate entities.  Sears is operating through many

3    different entities.

4                THE COURT:  Yeah.

5                MR. WERMAN:  And it has been difficult to kind of

6    figure it all out.  We have done that.  And we are going to

7    be amending the complaint to add Sears Holding Management

8    Corp., Kmart Corp. and Sears Holding Corp..  Sears Holding

9    Management Corp. is actually the operation -- the operational

10   entity that is actually employing individuals, as far as we

11   understand.  And Sears Holding Corp. is the publicly-traded

12   entity.

13               THE COURT:  Yeah.

14               MR. WERMAN:  The plaintiffs work for Kmart and

15   Sears.  And at this point in time it is our position that it

16   is one and the same.

17               MR. OH:  Your Honor, if I may.

18               THE COURT:  Yes.

19               MR. OH:  Yes, after the complaint was filed, I did

20   speak with Mr. Werman and his co-counsel Mr. Josephson at a

21   time when we thought this was just a Sears Roebuck case --

22               THE COURT:  Yes.

23               MR. OH:  -- involving loss prevention managers

24   inside Sears stores only.  And that is when I approached them

25   about the employer of the employees inside the Sears stores

1 is Sears Roebuck & Company.

2    THE COURT: Yeah.

3    MR. OH: And that is why we filed our motion. As

4 -- there has been four consents filed to join the lawsuit.

5 Turns out two of them are employees of Kmart. And so I

6 called him up and I told him, looks like you guys have two

7 Kmart people; the employer of the employees inside Kmart

8 stores is Kmart Corp. And that is when I suggested --

9    THE COURT: Okay.

10    MR. OH: -- to them that Kmart Corp. probably

11 should be added as a defendant.

12    I don't necessarily agree that either of the

13 holding companies, Sears Holding Corp. or Sears Holding

14 Management Corporation -- or Company should be in this case

15 because we will have the two employers of the opt-ins who

16 have joined this lawsuit. Sears Holdings Corporation is a

17 pure holding company with no employees. Sears Holdings --

18    THE COURT: Yeah, I had thought that that was the

19 reason for getting them out to begin with.

20    MR. OH: Right. Well, they had named Sears

21 Holdings Management --

22    THE COURT: Management, right.

23    MR. OH: -- Corp. Sears -- SHMC is a service

24 corporation to the two operating companies. They do -- Sears

25 Holdings Management Corp. does have employees that provide

1    some operational support to these two entities, Sears Roebuck

2    and Kmart.

3             THE COURT:  But not necessarily as loss prevention,

4    right?

5             MR. OH:  There might be.  And I wasn't going to

6    make an issue of having Sears -- anyone they want to add in

7    now.

8             THE COURT:  Okay.

9             MR. OH:  If they want to file an amended complaint,

10   I can accept service.

11            THE COURT:  Sure.

12            MR. OH:  And I will preserve our defenses with

13   respect to who the proper defendants are and --

14            THE COURT:  Right.

15            MR. OH:  -- worry about that later I think.

16            THE COURT:  Okay.  Now, that obviously makes the

17   motion for notice to potential class members premature

18   because you haven't got the right targets necessarily, right?

19            MR. WERMAN:  I actually think it is a -- I think

20   the -- it is not premature.  I think we can proceed on it.  I

21   think all that needs to happen, Judge, is we just need to

22   tweak the form of the notice documents --

23            THE COURT:  Okay.

24            MR. WERMAN:  -- that would be sent out.  But in

25   terms of it being properly supported with evidentiary

1    materials, I think we are prepared to proceed with that

2    motion at this time.

3              THE COURT:  Okay.

4              MR. WERMAN:  But we do intend to modify the notice

5    documents.

6              THE COURT:  Well, let me turn then to Sears counsel

7    and ask you about this one.  As you know, it is Exhibit D to

8    the -- to the present motion.  I did have a couple of issues

9    about it, but let me find out from your perspective.  The

10   purpose of this, obviously, is to -- is -- given the nature

11   of the structuring of this kind of action is to stop the

12   clock running in terms of limitations on as many people as it

13   is possible to do.  Or more accurately I guess, from the

14   plaintiffs' point of view, to get as big a time frame in as

15   to people.

16             What -- do you have substantive objections to the

17   idea of sending out a current notification?  That is question

18   one.  And question two is, do you have a problem as to the

19   form that has been tendered?

20             MR. OH:  Your Honor, we do have substantive

21   objections to notice going out in this particular case.  My

22   understanding was that at the last status when they said they

23   would be filing their motion for a notice with -- shortly, my

24   partner who was here asked if we would be able to take any

25   discovery before that motion got filed or before we

1    responded.  And I -- my understanding was --

2            THE COURT:  But my question I think then was, what

3    discovery?  I mean, you know, they -- I am not buying their

4    claim necessarily, but certainly no discovery is needed in

5    order --

6            MR. OH:  Well --

7            THE COURT:  -- to pose this kind of an action.

8            MR. OH:  Well, your Honor, I --

9            THE COURT:  I mean there may be a question, for

10   example, about whether the people are proper representatives,

11   but that doesn't have to wait on -- that doesn't have to be

12   resolved before a notice goes out to potential parties to

13   permit them to opt-in.

14           MR. OH:  I -- I actually kind of think it does

15   personally, I mean in the sense of the two-tiered process,

16   the two-stage process, that applies to these FLSA cases is

17   one that has developed ad hoc through the years through --

18   through case law.  There is nothing in the statute or in the

19   Federal Rules that really countenanced this approach.  And

20   one of the substantive objections I have to this motion at

21   this point in time that I wanted to brief was what, if any,

22   impact the Supreme Court's decision in Dukes versus Wal-Mart

23   has on cases like this.

24           Now, I understand that the Dukes --

25           THE COURT:  Well, you can be my guest on that.  But

1    at the same time there is no reason that they cannot send

2    this out. Remember that the notice is properly cautionary

3    about saying that Sears --

4            MR. OH: But --

5            THE COURT: -- objects, says that this doesn't

6    apply. It gives no assurances that there is any -- about the

7    validity of the claim or that there is going to be any

8    recovery. So nobody is harmed by the notice going out.

9            MR. OH: With all due respect, your Honor, the harm

10   comes --

11          THE COURT: You know, I hate that phrase because it

12   is -- it really is meaningless.

13          MR. OH: Right.

14          THE COURT: And I am not sure just how sincere it

15   is all the time because people disagree, quite properly, with

16   what I am saying. So you don't have to preface what you

17   say --

18          MR. OH: Thank you, your Honor.

19          THE COURT: -- with that demure.

20          MR. OH: I disagree, your Honor.

21          THE COURT: Okay.

22          MR. OH: I disagree in the sense that once notice

23   goes out, you can't un-notice anybody. I mean --

24          THE COURT: So.

25          MR. OH: Well, the so is that on what I believe is

1   the flimsiest of evidence notice is going to go out to a

2   couple thousand people that they can join this lawsuit. And

3   if 30 percent of them join in, all of a sudden we have a

4   lawsuit of not just five people -- but what is 30 percent of

5   a couple thousand? And on the basis of what? On the basis

6   of some declarations that are artfully drafted, conclusions

7   and hearsay, I believe.

8           And part of the discovery that I would like to take

9   at this point would be to test what they say in their

10  declaration to see what basis, if any, they have for saying

11  that all loss prevention managers around the country are

12  working over 40 hours a week without proper compensation or

13  that they are all performing the same duties or that in the

14  declarations that they have listed where they have --

15          THE COURT: All that comes out in the wash. But

16  again that is really nonresponsive to the question about how

17  this lawsuit should get launched and how it should be in a

18  situation in which there is no question that a failure to

19  communicate at this point is something that if it turns out

20  that the lawsuit has substance to it is going to deprive

21  people of rights.

22          Whereas if it goes out and it turns out that it is

23  a loser, then they haven't lost anything and all you have --

24  all your client has lost is paying lawyers' fees. You know,

25  but -- and that is not a basis for saying we are not going to

1   send out an appropriate notice.

2          I looked at the notice and it is -- it is really

3   properly cautious.  Mr. Werman has been around a long time on

4   these and he knows I think mostly -- although I see some gap

5   in this thing -- what at least is required in this Court for

6   such notices.  And they're -- they are appropriately

7   cautionary in terms of not giving assurances to the people or

8   the notified parties that they have really got a winner, or

9   anything at all.  It is -- it talks about how rights might be

10  affected.  And it talks about the fact that Sears, in a

11  separate statement on the first page of the notice -- "Sears

12  claims that it fully complied with all applicable laws and

13  denies any wrongdoing."  I mean it is full disclosure.

14         Now, I do have, as I say, two problems.  They both

15  exist on Page 2, if you take a look at it.  And that has to

16  do with the question of about where the -- what is an

17  effective date.  I always require, in order to avoid people

18  coming out of the woodwork, that the person who sends in a

19  joinder is responsible for delivery.  So that postmark date

20  is a loser.  It creates the potential that some response may

21  be -- may have been misdirected, and who knows how far down

22  the road somebody comes along and says, "Well, I did send it

23  in."  And, therefore, you avoid that.

24         So the -- what should be done is to provide that it

25  has to be -- they have to make sure that it is in the hands

1    of counsel by X date and that it is counsel's responsibility

2    then to take care of the necessary filing.  That way there is

3    no potential for the kind of problem that I have talked

4    about.  And that requires a minor modification in the

5    language in the first paragraph of Paragraph 4 which talks

6    about "you must file a consent to be made a party with the

7    Clerk of the Court" because the respondents are not taking

8    care of it getting to the Clerk of the Court as such.

9          And then in the second paragraph there is a typo.

10    The word "loss" should be "lost."  Do you see that?

11          MR. OH:  Yes, your Honor.

12          THE COURT:  "Should the envelope be lost or

13    misplaced."

14          MR. OH:  With a small l as opposed to capital L.

15          THE COURT:  Yeah, right.

16          And in the next paragraph the "if you complete" in

17    the second and third lines at the very end of the line the

18    "plaintiffs" is a possessive, so that ought to get an

19    apostrophe.  Okay.

20          In the paragraph numbered 5, your time to join is

21    limited, that is the one that I am talking about that really

22    needs modification to reflect the fact that -- instead of a

23    postmark date but also making it clear that the

24    responsibility for delivery is theirs.  So that however they

25    manage to get the thing to counsel is really the control

1    date.

2           And the last item that I noted on Page 2 is in

3    Paragraph 6 in the second line where it says "or have any

4    other way." That should say "or have in any other way."  Do

5    you see that?

6           MR. WERMAN:  Yes, Judge.

7           THE COURT:  Okay.

8           MR. OH:  Your Honor, if I may.

9           THE COURT:  Yes.

10          MR. OH:  I would like an opportunity to file an

11   opposition to this motion.

12          THE COURT:  Oh, you can do that, but --

13          MR. OH:  And I would like a sufficient amount of

14   time to be able to get our ducks in a row to be able to do

15   that as well.  And --

16          THE COURT:  Like what?  You have already talked

17   about your opposition.  Why should you need more time?  This

18   has been going on for sometime.

19          MR. OH:  This lawsuit or the motion has?  The

20   motion was just filed.

21          THE COURT:  I know, I know.  But you have known --

22          MR. OH:  I think that in all fairness we should be

23   given -- I don't know, 60 days to put together a response.

24          THE COURT:  No, come on.  Now, you know, that is

25   really an affront, frankly.  You don't need anything like

1    that.  If you have any objections, you can articulate those

2    very quickly.  But I got to tell you that I have thought --

3              MR. OH:  At least 30 days, your Honor.

4              THE COURT:  -- I thought about this a lot.  You

5    know, this is not the first such lawsuit I have had and it is

6    not the first one since the decision in Wal-Mart either

7    which, you know, has its own sphere but doesn't necessarily

8    govern this one.  The notion that somehow industries get

9    destroyed by this kind of thing is really an overstatement.

10             MR. OH:  And I am not -- that is not the position I

11   am taking, your Honor.  I do think that -- and I will -- we

12   -- I mean this lawsuit was filed back in July and they --

13   took them three months to get this lawsuit on file.  I am not

14   asking for nearly that much time to put our opposition

15   together to their motion.

16             THE COURT:  Did you think -- did you think that

17   they were not going to be asking for notice?  You knew from

18   day one they were going to be asking for notice, right?

19             MR. OH:  Yes, I did.

20             THE COURT:  You have had plenty of opportunity to

21   think about and you have thought about --

22             MR. OH:  We didn't know -- we did not know there

23   would be opt-ins from the Kmart side of the house.  We

24   thought this was just a Sears matter that.

25             THE COURT:  Of course, that really doesn't make any

1    change in substance at all. The concept that happens that

2    whoever the people are -- it may or may not turn out that

3    loss prevention people are doing the same thing. They may

4    lose out on that. They may end up with a very small group.

5    I don't know about that. And you don't know about that. But

6    that is not a predicate for saying let's hold off. So I am

7    certainly --

8            MR. OH: Could I -- could I --

9            THE COURT: I am certainly going to be willing to

10   let you make your record, as they say, and I will give you

11   14 days to do that. But in the meantime --

12          MR. OH: May I have 30, your Honor?

13          THE COURT: No, you don't need it. You know, come

14   on. I used to practice law in the days before Noah's flood.

15   I know what it takes. And you don't need it. And that is --

16   that is just not justified. And this -- all of this, you

17   know, casts a serious cloud on what kind of position Sears is

18   and ought to be taking in connection with this one. You are

19   not losing anything. Sears is not losing anything by reason

20   of this notice going out. I don't know how to make that more

21   plain. The notice itself makes that plain. And so the idea

22   of stonewalling by --

23          MR. OH: Your Honor, I am not --

24          THE COURT: -- putting it out some extended period

25   is not appealing. And I have told you that you can get your

1    ducks in a row, as you say.  You can make your legal

2    arguments by a filing in 14 days.  But in the meantime I

3    expect that the notice is going to be put together and it is

4    going to be ready to go.

5          MR. WERMAN:  Very good.

6          MR. OH:  The other -- I do have a couple other

7    issues with the notice, your Honor.

8          THE COURT:  Yeah, tell me.

9          MR. OH:  Okay.  They ask for, number one, a 90-day

10    period.  And there have been other notices approved that have

11    had 60-day notice periods is number one.

12          They have also asked --

13          THE COURT:  Let me ask you, Mr. Werman, why do you

14    think three months ought to -- once again if people -- when

15    they are told that they may or may not have a claim, they get

16    two months to file a response that says, if we can do it, we

17    will do it.  What is wrong with that?

18          MR. WERMAN:  Potentially nothing, Judge.  We have

19    had 60-day notices approved.  We have had 90-day notices.

20          THE COURT:  All right.

21          MR. WERMAN:  The 90-day notice -- the reason why we

22    asked for 90 was that we were building into the schedule a

23    time to provide a reminder notice.

24          THE COURT:  Yes.  You get 63 days, so it comes out

25    on a weekday.

1        MR. WERMAN:  Yes.

2        THE COURT:  Okay?

3        MR. OH:  Now, speaking of the reminder notice, I

4  also was going to object to them sending out a reminder.  I

5  think one notice is sufficient for this time period.

6        THE COURT:  Yeah, it -- I don't see --

7        MR. WERMAN:  There is a case, Judge -- Judge -- the

8  Bettencourt decision.  Magistrate Judge Gilbert just issued

9  that, and he provided for a reminder notice.  It has been our

10  experience in these cases we have had that the majority of

11  the --

12        THE COURT:  People just throw them away?

13        MR. WERMAN:  They do, Judge.  They do.  And so we

14  are trying to provide the best notice possible to provide the

15  best opportunity for people to be informed to make an

16  informed decision.  That is all.

17        THE COURT:  And who pays for the reminder?

18        MR. WERMAN:  We do, Judge, the plaintiffs pay for

19  all the notice.

20        THE COURT:  Okay.  I am not going to enlarge the

21  63 days, but I am going to permit, for example, a reminder

22  notice, let's say, with 14 days of that remaining.  So that

23  if people have either inadvertently or otherwise thrown them

24  away, they will -- and choose to join, they have a right to

25  join.

1   MR. OH:  And, your Honor, I haven't seen this

2   reminder notice, and so I would request --

3       THE COURT:  Yeah, he can submit that to you and you

4   can take a look at that.

5       MR. OH:  And, your Honor, I don't want to give any

6   wrong impression about what Sears' intent here is.  I mean if

7   we were stonewalling, we would not have picked up the phone

8   and called them and tell them, here are the proper

9   defendants, here is who should be in this case.  I am just

10  trying --

11      THE COURT:  Yeah, I shouldn't be overly critical,

12  but, you know, confidence is not inspired by the kinds of

13  substantive arguments that have been advanced.  I am

14  certainly appreciative of the courtesies that you have

15  extended to him, but that is a separate issue really.

16      Okay.  Now let's -- wait just a minute.

17      MR. OH:  So 14 days from today, your Honor, is the

18  20th.

19      THE COURT:  Yes, I know that.  But wait just a

20  minute.  I was just seeing whether I had a next status date.

21  I don't.  So I am going to give Sears a response to be filed

22  by October 20th.  I am going to set a status date that would

23  go past the anticipated 63 days.  So allowing for time to get

24  stuff together, I would think that maybe about two and a half

25  months would be appropriate, which would put us into maybe

1    the week of December 19th through the 23rd for a status.

2         Now, that doesn't inhibit anybody from coming in on

3    anything that may arise in the interim, but that is a status

4    date that I am pegging that would be after the anticipated

5    responses so we know what we are looking at.  So in that week

6    of the 19th through the 23rd --

7         MR. WERMAN:  Judge, I am going to actually be out

8    of town that whole week.

9         THE COURT:  Are you going to be back the next week?

10        MR. WERMAN:  Yes, Judge.

11        THE COURT:  Okay.  In the week of December 26,

12   which I think is probably the holiday, the observed

13   holiday -- so in the week of December 27th through the 30th,

14   any day better or worse for either of you?

15        MR. WERMAN:  The 28th is -- I am going to be back.

16        THE COURT:  That is Wednesday?

17        MR. WERMAN:  Yeah, that is a Wednesday.

18        THE COURT:  Is that okay for you, counsel?

19        MR. OH:  Yes, your Honor.

20        THE COURT:  All right.  Status then 9:00 o'clock

21   December 28th.

22        MR. WERMAN:  Judge, if you are anticipating the

23   notice going out on sufficient time so that we know the

24   number of opt-ins by December 28th, is there a date by which

25   Sears need to be providing to us the list of employees?

```
 1              THE COURT:  How soon can you put that together?
 2              MR. OH:  I will find out today and let Mr. Werman
 3    know.  I can't -- I don't have an answer right now.
 4              THE COURT:  Okay.  But you ought to do that
 5    promptly.
 6              MR. OH:  Yes, your Honor.
 7              THE COURT:  And I will rely on both of you to be
 8    cooperating on that.  Okay?
 9              MR. WERMAN:  Thanks, Judge.
10              THE COURT:  Thank you.
11              MR. OH:  Thanks.
12              THE CLERK:  Are you granting leave to file an
13    amended complaint?
14              THE COURT:  Yeah, I hate to issue a blank check,
15    but I am going to give you leave to file an amended complaint
16    to get the right ducks in a row.
17              MR. WERMAN:  Very good.
18              THE COURT:  Okay?
19              MR. WERMAN:  Thank you, Judge.
20              MR. OH:  Thanks.
21         (Which were all the proceedings heard.)
22
23
24
25
```

1                      CERTIFICATE

2      I certify that the foregoing is a correct transcript

3  from the record of proceedings in the above-entitled matter.

4

5  s/Rosemary Scarpelli/       Date:  October 6, 2011

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3    ROBERT O'TOOLE, et al.,          )  No. 11 C 4611
                                       )
 4                    Plaintiffs,      )  Chicago, Illinois
                                       )  October 26, 2011
 5                                     )  9:30 o'clock a.m.
      -vs-                             )
 6                                     )
                                       )
 7    SEARS HOLDINGS MANAGEMENT        )
      CORPORATION, et al.,             )
 8                                     )
                      Defendants.      )
 9

10            TRANSCRIPT OF PROCEEDINGS - STATUS
        BEFORE THE HONORABLE MILTON I. SHADUR
11
      APPEARANCES:
12
      For the Plaintiffs:      WERMAN LAW OFFICE P.C.
13                             77 West Washington Street
                               Suite 1402
14                             Chicago, Illinois 60602
                               BY:  MR. DOUGLAS M. WERMAN
15                                     and
                               FIBICH HAMPTON LEEBRON BRIGGS
16                             & JOSEPHSON, LLP
                               1150 Bissonnet
17                             Houston, Texas 77005
                               BY:  MR. MICHAEL A. JOSEPHSON
18
      For the Defendants:      LITTLER MENDELSON, P.C.
19                             321 North Clark Street
                               Suite 1000
20                             Chicago, Illinois 60654
                               BY:  MR. JAMES J. OH
21

22

23    Court Reporter:          ROSEMARY SCARPELLI
                               219 South Dearborn Street
24                             Room 2304A
                               Chicago, Illinois  60604
25                             (312) 435-5815
```

1        THE CLERK: 11 C 4611, O'Toole versus Sears.

2        THE COURT: Which one?

3        THE CLERK: O'Toole. Remember this is the one we

4  talked about this morning. They were asking for --

5        THE COURT: Oh, geez, I left O'Toole out in --

6        MR. WERMAN: Good morning, Judge.

7        MR. OH: Good morning.

8        MR. WERMAN: Doug Werman, W-E-R-M-A-N, for the

9  plaintiffs.

10       MR. JOSEPHSON: Michael Josephson for the

11 plaintiffs.

12       MR. OH: James Oh for the defendants.

13       THE COURT: Wait just a minute. I left the latest

14 O'Toole filing in chambers. I will get it right now.

15    (Brief pause.)

16       THE COURT: Well, counsel, as you know, defendant's

17 essential response is that they are perfectly prepared,

18 because we were all concerned about limitations that would be

19 running the way this kind of action runs. They are saying,

20 look, we are prepared to stipulate that the limitations

21 period is told. I am a little troubled because they have

22 said now rather than, for example, going back to when the

23 motion is filed.

24       MR. OH: We would do that too, your Honor.

25       THE COURT: Pardon?

1    MR. OH:  We would do that if your Honor thought
2    that was --
3         THE COURT:  Okay.  Now let me ask Mr. Werman.  They
4    are saying that before 2200 or 2300 people are circulated, as
5    long as there is no arguable harm to them because limitations
6    are told in much the same way as in a general class actions.
7    As you know, the pendency is enough to prevent people from
8    being pardoned by limitations in the interim.
9         What is wrong with their response, if anything?
10        MR. WERMAN:  Well, the question is whether or not
11   notice should issue to these employees because they were all
12   subjected to the same policy, which is the denial of the
13   overtime pay.  There is no question I think they acknowledged
14   it when we were here.  And we provided evidentiary support as
15   part of our motion now.
16        THE COURT:  Well, on that score it seems to me --
17   as chance would have it yesterday I gave a -- "A view from
18   the Bench, a two-day national conference on class actions,
19   you know, so I was talking as you might guess, about this
20   kind of problem.  And in Wal-Mart in general class actions
21   has really changed the -- changed the dynamics and the
22   scenery entirely.
23        But if they -- well, let me put it a little
24   differently.  If there is an arguable predicate for saying
25   that what you have just said, that is, being subjected to the

1   same conditions and the same category, then it seems to me

2   that it is appropriate to err on the side of a general

3   communication.

4         If, however, as a result of what they are talking

5   about, some discovery -- and I would not think it should be

6   too long -- they are able to demonstrate that that is not

7   true, that there is really a smaller set, then I think we

8   ought to look at that because I think that would be

9   responsible.  Meanwhile, as I say, your people are not being

10   harmed.

11         So I am prepared to accept their response in

12   opposition, but I don't think it ought to string out very

13   long.  So tell me how long you think it is going to take you

14   to do whatever discovery you are talking about.  I am not

15   exactly clear as to what you would expect to do.

16         MR. OH:  I have not had the chance to confer with

17   my opposing counsel on this, your Honor, but some general

18   thoughts I had in mind were to do some limited document

19   discovery on the notice issue, take the depositions of the

20   five people who have joined the case up to this point.  I am

21   sure that the plaintiffs' counsel might want to --

22         THE COURT:  Well, wait just a minute.  You are

23   talking about discovery.  Are you going to be -- are you

24   addressing typicality or commonality, or what are you

25   addressing?

1          MR. OH:  It would be the -- whether or not they are

2     similarly situated under 216(b) of the Fair Labor Standards

3     Act, your Honor.

4          MR. WERMAN:  Judge, I think it is important to

5     remember this is not a Rule 23 case.

6          THE COURT:  Right.

7          MR. WERMAN:  This is a 216(b) case.

8          THE COURT:  This is a 216(b), right?

9          MR. WERMAN:  Right.  And so the evidentiary

10     showing, if any -- because remember the 7th Circuit has

11     stated that a District Court cannot deny the issuance of

12     notice altogether.  The evidentiary showing that is required

13     under 216(b) is entirely different than under a Rule 23.

14          THE COURT:  Right.  I know that.

15          MR. WERMAN:  And when we here -- if it was the last

16     time or two times ago, the Court was really clear that Sears

17     already has the black box.  It already knows --

18          THE COURT:  Yeah.

19          MR. WERMAN:  -- what --

20          THE COURT:  Well, let me try again.  If -- is that

21     the kind of discovery you are really talking about?

22          MR. OH:  Your Honor, we had pointed out in our

23     papers that the named plaintiff for part of the statute of

24     limitations period was actually classified as a nonexempt

25     employee.  The two other --

1          THE COURT:  Yeah, but that is a self-defined thing.

2     That is not -- that doesn't create the law.

3          MR. OH:  But --

4          THE COURT:  It says -- it says, "We thought so."

5     But your thinking so didn't make it so.

6          MR. OH:  But there is a modest factual showing that

7     does need to be made under Circuit authority, and we submit

8     that the declarations that were submitted don't rise to that

9     level in and of themselves.  And there is a difference --

10    there is a material difference between the named plaintiff

11    and the two other people who submitted declarations.  And

12    there is also a difference between those three and the two

13    others who have joined this case who did not submit

14    declarations.

15         THE COURT:  Well, you say there is a difference.

16    We have all heard the phrase "distinction without a

17    difference."  You are talking about distinctions.  I am not

18    sure that that constitutes a difference in those terms in the

19    legal sense.

20         MR. OH:  But all we are asking for --

21         THE COURT:  If you are -- if you are just saying

22    that you are going to point out that the characterization

23    that you people had made that defendant or defendants -- I am

24    not sure which it was -- on the -- among the three people is

25    something that should make a difference in terms of whether

1　the potential opt-ins ought to be circulated, that is not

2　particularly convincing.  I didn't know that that was the

3　kind of discovery you are talking about.

4　　　　MR. OH:  The other -- the other points that we

5　made, your Honor, is that there are actually two exemptions

6　in play here.  There is the executive exemption and

7　administrative exemption.

8　　　　THE COURT:  Yeah.

9　　　　MR. OH:  And there are some people who would

10　potentially receive notice who were loss prevention managers

11　over multiple different stores as opposed to Mr. O'Toole.

12　　　　THE COURT:  Well, let's try again.  The fact that

13　somebody gets notice and may make a claim, for example,

14　doesn't get that person locked in as a potential plaintiff

15　entitled to recover because that is the whole purpose of

16　sending out notice and getting responses, that is, you get --

17　then you get factual information about whether the people

18　would qualify, for example, for an administrative or an

19　executive exemption.  But the only way you know that is not

20　by your discovery in connection with these -- the current

21　opt-ins.  I don't understand that one at all.

22　　　　MR. OH:  But I think --

23　　　　THE COURT:  If that is the predicate for it, you

24　don't get it.

25　　　　MR. OH:  But I think your Honor was absolutely

1   correct in saying before notice goes out to 2,882 people

2   there needs to be more --

3                  THE COURT:  Who is paying?

4                  MR. WERMAN:  Plaintiffs are paying.

5                  THE COURT:  Plaintiffs are paying.

6                  MR. OH:  There is --

7                  THE COURT:  You know, so -- and notice -- the

8   notices always say very carefully this does not tell you you

9   have got a claim, and the Court hasn't made any judgment

10  about it, and the defendants deny it.  So, you know, it is

11  full -- it is full disclosure.  I just -- nobody can claim to

12  have been misled by reason of receiving the notice.

13                 MR. OH:  No.  And we have agreed to the notice

14  language, your Honor.  We worked that out since the last time

15  we are here.  So there is no issue about what is stated in

16  the notice.  The question is of whether or not the notice

17  even should go out when there are clear and factual

18  differences between the individuals who have already joined

19  the case.

20                 THE COURT:  Yeah, but those we find out when we get

21  the answers.

22                 MR. WERMAN:  Yeah.  Judge, this is -- all the

23  discovery that he is talking about is merits discovery that

24  is step two of this process.  And --

25                 MR. OH:  It is not all --

1    THE COURT:  I am sorry, I have not understood that
2   that was the class -- that is a bad pun -- that was the kinds
3   of discovery that you were talking about.  If that is it,
4   then you are -- there is no reason to hold off.  Let the
5   notices go out.  It may turn out that 2,100 of the people
6   don't qualify.  And if so, too bad for them.  But plaintiffs
7   are paying, so you can't -- I don't think you can complain
8   about that.  You know --
9    MR. OH:  Your Honor --
10    THE COURT:  -- if the natives -- if the natives are
11  made restless by reason of having received notices, but it
12  turns out that they don't have a claim, well, you know, that
13  is life.  I don't -- I just don't see that as a basis.  I am
14  going to grant the transmittal we have already talked about
15  form.
16    MR. WERMAN:  Yeah.  Judge, on October 20th the --
17  we filed the notice documents that had been agreed to by the
18  parties, so we acknowledged a class list.
19    THE COURT:  Did I -- did I mark that one up for you
20  or not?
21    MR. WERMAN:  We -- the last time we were here you
22  proposed or told us the changes you wanted to have made to
23  it.  And we made --
24    THE COURT:  I told you the changes.  I did mark it
25  up.

```
 1              MR. WERMAN:  And we made those.  We filed that on
 2  October 20th.
 3              THE COURT:  Okay.  All right.  So the motion for
 4  notice to potential class members, which is a -- an
 5  inaccurate characterization under Rule 216(b), potential
 6  plaintiffs, opt-ins, under rule -- under Section 216(b) is
 7  granted.
 8              Now, how long is it -- have you -- you haven't
 9  received a printout of the whole works, right?
10              MR. WERMAN:  We do not have the class list yet,
11  Judge.
12              THE COURT:  Okay.  How long is that going to take
13  you to put together?
14              MR. OH:  One second.
15              THE COURT:  Yeah.
16              MR. OH:  Your Honor, I will hand over this class
17  list that is on this CD right now.
18              THE COURT:  Okay.  Now, how long is it going to
19  take to get the -- well, that is on part of it.  What about
20  yours?
21              MR. JOSEPHSON:  The -- to get the notice out -- you
22  are asking me how long it is going to take to get the notice
23  issued to the class members?
24              THE COURT:  No, how -- the list.  Is that both?
25              MR. JOSEPHSON:  Yeah, Mr. Oh --
```

```
 1              THE COURT:  Is that for both?

 2              MR. JOSEPHSON:  This is -- Mr. Oh represented to us

 3    last week that he would have the list.

 4              THE COURT:  Is that for Sears and Kmart, right?

 5              MR. OH:  Kmart.

 6              MR. JOSEPHSON:  I haven't had a chance to look at

 7    it, obviously.

 8              MR. OH:  It should be.

 9              MR. JOSEPHSON:  But I trust that it is what he says

10    it is.

11              THE COURT:  All right.  So --

12              MR. OH:  It should be 2,882 names of Sears and

13    Kmart.

14              THE COURT:  As a matter of mechanics -- I am

15    talking to Mr. Werman now -- to implement that and send the

16    thing out and get the responses back?

17              MR. WERMAN:  Yeah.  I think a week from Friday we

18    can have that out.  A week from this Friday.

19              THE COURT:  And you are add -- giving them, what,

20    63 days?

21              MR. WERMAN:  Exactly.

22              THE COURT:  All right.  So wait a minute.  So you

23    would be getting it out on November 4th, right?

24              MR. WERMAN:  Yes, Judge.

25              THE COURT:  So that put the response date just not
```

1    long after January 1st.  It would be January -- about

2    January 6.  So let me set a status in the week after that,

3    which would be January 9th through the 13th.  And in that

4    week you can take your choice.  Any preference?

5              MR. WERMAN:  No, Judge, any time that week.

6              MR. JOSEPHSON:  Can we do the Wednesday of that

7    week?

8              THE COURT:  Wednesday is fine.

9              MR. JOSEPHSON:  Okay.

10             THE COURT:  So Wednesday, January 11th.

11             MR. OH:  Your Honor, there is a status date

12   currently scheduled for December 28th.

13             THE COURT:  I am going to vacate that, yeah.

14             Wait just a minute.  So it is going to be

15   January 11, 2012 at 9:00 o'clock.

16             Thank you.

17             MR. WERMAN:  Thanks, Judge.

18             MR. JOSEPHSON:  Thank you, your Honor.

19             MR. OH:  Thank you, your Honor.

20        (Which were all the proceedings heard.)

21                       CERTIFICATE

22       I certify that the foregoing is a correct transcript

23   from the record of proceedings in the above-entitled matter.

24

25   s/Rosemary Scarpelli/        Date:  November 7, 2011