# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DOMONIQUE NATASHA BRIGGS and SAMAR HASSAN, on behalf of themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>   v.<br><br>PNC FINANCIAL SERVICES GROUP, INC., and PNC BANK, N.A.,<br><br>                   Defendants. | No. 15-CV-10447<br><br>Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

      Plaintiffs Domonique Natasha Briggs and Samar Hassan (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, have moved the Court to conditionally certify the proposed collective action and approve Plaintiffs' proposed "Collective Action Notice and Consent to Join Form." [23]. For the following reasons, the Court, in its discretion, grants Plaintiffs' motion.

## BACKGROUND

      On November 19, 2015, Plaintiffs, individually and on behalf of other employees similarly situated, filed the present two-count Collective and Class Action Complaint alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (the "IMWL"), based on Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A.'s (collectively, "PNC") alleged failure to pay overtime wages. Now, Plaintiffs move for conditional certification and court-authorized notice under 29 U.S.C. § 216(b). (R. 23.) Plaintiffs present evidence to illustrate that they and

other potential plaintiffs, Assistant Branch Managers ("ABMs") nationwide, are "similarly situated." (*Id*.) Specifically, Plaintiffs assert that ABMs nationwide regularly conduct non-exempt overtime work and are not appropriately compensated, in violation of the FLSA. PNC objects. (R. 41.) Instead, argues PNC, the ABMs are properly exempt under the FLSA, and Plaintiffs fail to present "similarly situated" plaintiffs for conditional certification. (*Id*.) For the following reasons, the Court, in its discretion, grants Plaintiffs' motion for conditional certification.

## ANALYSIS

### I.    FLSA Collective Actions

Pursuant to the FLSA, "employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). To assert such claims, the FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b) (2006)). Importantly, "[a] collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent." *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012) (citing *Erin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011)).

Although the Seventh Circuit has not established criteria for determining whether employees are "similarly situated" for "collective action" purposes, " 'the majority of courts . . .

have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.' " *See Franks*, 2012 WL 3903782, at *9 (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008)); *see also Medina v. Happy's Pizza Franchise, LLC*, No. 10 C 3148, 2012 WL 1094353, at *2 (N.D. Ill. Apr. 2, 2012). Step one involves a conditional certification, and step two, a final certification. Plaintiffs' burden increases with each, directly proportional to discovery progress. *See Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013) ("The certification of an FLSA collective action typically proceeds in two stages. The first stage . . . involves conditionally certifying a class for notice purposes. There is a low standard of proof. . . . The lenient interpretation standard, however, has sometimes been supplanted by a more rigorous examination standard if there has been more extensive discovery[.] . . . The second stage in a collective proceeding comes after any opt-ins have appeared and discovery has been finished. . . . At that stage . . . the court makes a more rigorous examination of the facts relating to whether or not the case may appropriately continue as a collective action.").

This case is at step one, the conditional certification stage. The purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are "similarly situated." *See* 7B Charles A. Wright et al., *Federal Practice & Procedure* § 1807; *see also Gomez v. PNC Bank, Nat'l. Assoc.*, 306 F.R.D. 156, 173 (N.D. Ill. 2014). Indeed, "[t]he conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin*, 632 F.3d at 974. This "first step requir[es] 'a minimal showing that others in the potential class are similarly situated.' " *Creal v. Grp. O,*

*Inc.*, ___F.Supp.3d ___, No. 13 C 4275, 2016 WL 98566, at *4 (N.D. Ill. Jan. 8, 2016) (citation omitted); *see also Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012). Importantly, the parties have yet to engage in any discovery.[1] As such, Plaintiffs need only make "a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Id*. (citation omitted); *see also Steger v. Life Time Fitness, Inc.*, No. 14-cv-6056, 2016 WL 245899, at *2 (N.D. Ill. Jan. 21, 2016) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)); *Medina*, 2012 WL 1094353, at *2. Affidavits, declarations, other documents, or deposition testimony can support this "modest factual showing." *See Calverley v. Careerbuilder*, *LLC,* No. 13 C 1967, 2015 WL 4450045, at *1 (N.D. Ill. July 20, 2015). Potential plaintiffs need not be identically situated, only similarly situated. *See Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 812 (citing cases). Some limitations, however, exist. Put differently, conditional certification is not automatic. To proceed as a collective action, Plaintiffs must " 'demonstrate[] similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present.' " *Id*. at 812 (quoting *Vennet v. Am. Intercont'l Univ. Online*, No. 05-4889, 2005 WL 6215171, at *6 (N.D. Ill. Dec. 22, 2005)). Ultimately, if step one's "low burden is met, notice may be issued to prospective plaintiffs who may opt into the action, with discovery to follow." *Creal*, 2016 WL 98566, at *4.

Significantly, at this initial stage, "[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a

---

[1] Because the parties have not engaged in any discovery yet, a number of cases that PNC cites in its Response (R. 37) and Supplemental Authority (R. 42), where the parties had engaged in discovery before certification, are inapplicable.

4

defendant." *Bergman*, 949 F. Supp. 2d at 855-56 (citation omitted); *see also Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011) ("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility"). Indeed, "[a] district court has wide discretion to manage collective actions." *Alvarez*, 605 F.3d at 449.

## II.     Relevant Facts

Plaintiffs present a number of factual bases to illustrate that the proposed plaintiffs, ABMs across the nation, are "similarly situated." Taken together, Plaintiffs contend, this evidence portrays ABMs with similar day-to-day duties, PNC ABM-expectations, non-exempt overtime work, and lack of compensation in violation of the FLSA. The evidence includes PNC's ABM job descriptions, five ABM declarations, and a PNC corporate representative's deposition testimony in a related case.

### A.     PNC's ABM Job Posts

Plaintiffs first claim that "PNC's own ABM uniform job postings from 23 different locations demonstrate the company's own view that all ABMs perform essentially the same duties, no matter where they are located." (R. 24 at 17.) Specifically, PNC's ABM job postings describe the ABM "job profile" as including the following duties:

1.  Supports all aspects of branch, including individual and team, performance. Builds a high performing team through the attraction, onboarding, coaching and development of branch team members. Leads through influence and impacts a broad range of eco-system partners in an omni channel environment. Drives revenue and loyalty through proactive interactions with clients.

2.  Manages, coaches and executes a proactive client experience within an omni channel environment. Provides solutions and advice to improve client financial well-being. Leads effective problem resolution.

5

3. Manages the branded sales process to proactively achieve sales targets and customer loyalty. Grows branch revenue through acquisition and share-of-wallet growth of consumer and business households.

4. Drives the employee experience. Responsible for acquiring and retaining talent through the coaching and development of employees. Coaches employees to achieve performance and activity expectations. Assists in the performance management process for all employees.

5. Manages operational, human capital, reputational and business risk through adherence to established policies and procedures. Exercises sound decision making to identify and mitigate potential risk.

(R. 25-1, Exh. A, at 3-63.) Moreover, as Plaintiffs note, PNC lists this same "Job Profile" for ABM positions in over twenty PNC branches located in nine states, including Florida, Indiana, Illinois, Maryland, Michigan, New Jersey, Pennsylvania, Ohio, and Virginia. (R. 24 at 17; R. 25-1, Exh. A, at 3-63.)

B. ABM Declarations

Additionally, Plaintiffs assert that "Plaintiffs' [sic] from five different states also attest to performing the same [ABM] job duties regardless of where they worked." (R. 24 at 17-18.) Those ABMs include the two named Plaintiffs and three potential opt-in plaintiffs, including Rosanne Henkel from PNC's Boca Raton, Florida branch (R. 25-2 at 2, Exh. B); Dustin Ransom from PNC's Huntington, Indiana branch (*Id*. at 9, Exh. C); Jessica Thomas from PNC's Cleveland, Ohio branch (*Id*. at 16, Exh. D); Dominique Natasha Briggs from PNC's Chicago, Illinois branch (*Id*. at 28, Exh. F); and Samar Hassan from PNC's Oakton, Virginia branch. (*Id*. at 35, Exh. G.)

All five ABMs attest that PNC failed to compensate them for regularly occurring, non-exempt, overtime work. Moreover, each states that he or she observed other ABMs share the

6

same experience. Jessica Thomas, from PNC's Cleveland branch, for example, states the following:

> I frequently worked more than 40 hours per week. Typically, from Monday to Friday, I worked 10 hours each day, arriving 60 minutes before the branch opened, and leaving 60 minutes or more after the branch closed. On most days I had to stay late to perform additional duties, such as []counting teller drawers, batching the cash advance machine, making campaign calls, performing end-of-day reviews, and other closing procedures. . . .
>
> Working overtime hours to accommodate PNC Bank's clients and meet PNC Bank's business objectives was a routine and necessary part of the Assistant Branch Manager position. . . . At no time do I recall that PNC Bank systematically or accurately recorded the hours that I or other Assistant Branch Managers worked. . . .
>
> As an Assistant Branch Manager, my primary duties were sales, customer service, and operations. Like other Assistant Branch Managers, my primary duties were waiting on PNC Bank's customers and servicing their banking needs. Thus, as an Assistant Branch Manager I spent the majority of my time on tasks such as greeting customers, working the teller line, working in the lobby, taking deposits, making credit payments, opening and closing accounts, processing loan applications, receiving and making phone calls, answering questions, addressing overdrafts, maintaining the ATM, counting money, printing reports, proof-reading forms, and performing clerical work. . . . I spent about 95% of my time each day performing the job duties [described above].
>
> Based on my observations of Assistant Branch Managers who worked at other branches, all Assistant Branch Managers performed the same or similar primary duties. I know this because I and other Assistant Branch Managers participated in calls and meetings. . . . I also visited or filled-in at other branches in the area and saw that the duties were the same. Like me, other Assistant Branch Managers that I knew regularly worked more than forty hours each workweek. . . . Other Assistant Branch Managers with whom I interacted were paid similarly to me and also did not receiver overtime pay.

(R. 25-2 at 17, 20, Exh. D.) Each of Plaintiffs' five ABM declarations include nearly identical statements regarding their duties, non-exempt overtime work, lack of compensation, and familiarity with other ABMs' similar circumstances. (*Id.*, Exhs. B-D, F-G.)

### C. PNC's Corporate Representative Deposition in *Moore v. PNC Bank, N.A.*

Finally, Plaintiffs present Ms. Vicki Henn's deposition from *Moore v. PNC Bank, N.A*, No. 12-1135, 2013 WL 2338251 (W.D. Penn. May 29, 2013) whom Plaintiffs argue was PNC's "corporate representative to testify on numerous issues, including the duties, hours[,] and classification of ABMs." (R. 24 at 8, n.2.) Plaintiffs argue that "Ms. Henn's testimony is further evidence that the ABM position is homogenous and that there is one primary duty of the job title[,] . . . support[ing] conditional certification." (R. 41 at 16.)

Specifically, Ms. Henn answered "[y]es" when asked whether "the jobs[,] duties[,] and functions of the ABM position [are] the same throughout the company at every branch[.]" (R. 25-2 at 26, Exh. E.) Ms. Henn further confirmed that PNC does not pay ABMs across the nation overtime, answering "[y]es" when asked whether "PNC has a business practice of uniformly classifying all of its ABMs overtime-exempt regardless of the branch that the ABM is assigned to[.]" (*Id.*)

### III. Proposed Plaintiffs Are "Similarly Situated"

Plaintiffs successfully make a "modest factual showing" that they and their proposed potential plaintiffs are "similarly situated." *Creal*, 2016 WL 98566, at *4 (citation omitted). Indeed, Plaintiffs make "a minimal showing" that they and ABMs nationwide allegedly perform nearly identical duties under similar PNC guidelines, regularly work more than forty hours a week, and fail to receive appropriate compensation for non-exempt work, in violation of the FLSA. *Id.* at *4. PNC's ABM job descriptions for over twenty PNC branches located across nine states, for example, each recite the same ABM "job profile" verbatim. These posts factually support the notion that ABMs nationwide perform similar duties and responsibilities and operate under similar PNC objectives. Moreover, five former ABMs spanning five different PNC

branches and states state that they, and other ABMs across the nation, regularly worked more than forty hours a week, performed similar non-exempt work, and were not compensated appropriately. These declarations not only support that ABMs' duties and expectations are uniform, but also that they allegedly "were victims of a common policy or plan that violated" the FLSA. *Id*. at *4. Finally, Ms. Henn adds a national element to Plaintiffs' evidence. Specifically, she testified that 1) ABM duties are the same throughout every PNC branch nationwide, 2) PNC's ABM-expectations are uniform across every branch, and 3) PNC did not pay any ABMs overtime, instead categorizing the position as entirely "exempt." Taken together, Plaintiffs' evidence presents a "modest factual showing" that the proposed plaintiffs are "similarly situated." Thus, the Court grants Plaintiffs' step one, conditional certification motion.

PNC's counterarguments are unpersuasive. PNC's primary objection is that "ABMs at PNC are properly classified as exempt employees under the administrative, executive, and/or combination exemptions." (R. 37 at 12.) The FLSA exemption states, in relevant part, that "[t]he provisions of section 206 . . . and section 207 of this title shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman[.]" 29 U.S.C. § 213(a)(1). Given this exemption, PNC concludes that "Plaintiffs were not 'victims of a common policy or plan' to classify over 1,300 ABMs nationwide as exempt while requiring them to perform primarily non-exempt duties." (R. 37 at 18.) PNC bears the burden of establishing this exemption. Notably, however, at step one, "the court does not resolve factual disputes or decide substantive issues going to the merits." *Larsen*, 2011 WL 3047484, at *1. PNC's attempt to classify ABMs' primary responsibilities as "exempt," thereby properly left

uncompensated under the FLSA, is a premature merit-based argument. Indeed, separating and classifying each ABM duty as either exempt or non-exempt is an inappropriate fact-intensive analysis better accomplished with the aid of discovery. *Schaefer-LaRose*, 679 F.3d at 572 (determining the application of this exemption "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities") (citing *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 870 (7th Cir. 2008)). Instead, at the pre-discovery, step one conditional certification stage, it is within the Court's wide discretion to determine whether Plaintiffs hurdle their minimal burden to show that the proposed plaintiffs are similarly situated without "consider[ing] the merits of a plaintiff's claims[.]" *Nehmelman*, 822 F. Supp. 2d at 751. Given the evidence described above, Plaintiffs have.

Further, PNC's reliance on *Moore* is misapplied. Specifically, PNC counters that "[t]his is the second attempt to drum up a nationwide collective action regarding PNC's ABMs. The first attempt failed in May 2013 when a Pennsylvania district court refused to conditionally certify the same nationwide ABM collective action[,] . . . and the same result is warranted here." (R. 37 at 6, citing *Moore*, 2013 WL 2338251.) In *Moore*, however, the judge denied the plaintiff's attempt to conditionally certify a nationwide PNC ABM class under FLSA because the plaintiff "neither filed any supporting declarations nor included deposition testimony of any other current or former ABMs to bolster her claim." *Moore*, 2013 WL 2338251, at *6. "Without more," the judge concluded, "Plaintiff Moore fail[ed] to meet her modest burden." *Id*. Here, Plaintiffs rely on much more. Indeed, as described in more detail above, Plaintiffs include in their factual nexus PNC's own ABM job descriptions for over twenty branches across nine states, five ABM declarations from five separate PNC branches in five different states, and a PNC corporate representative's relevant deposition from *Moore*. PNC additionally argues,

relying again, in part, on *Moore*, that "[c]lassifying a group of employees as exempt cannot alone be the glue that binds an FLSA action." (R. 37 at 18.) Again, however, Plaintiffs' evidence includes more than just PNC's exempt classification for ABMs. Instead, Plaintiffs provide factual support illustrating, in relevant part, alleged ABM non-exempt overtime work and a lack of compensation in violation of the FLSA spanning a number of PNC branches and states.

PNC's objections to each piece of evidence meet the same fate. First, PNC claims that its ABM job postings "show the opposite of Plaintiff's claim" and instead illustrate that "the ABM job descriptions applicable to the Plaintiffs and opt-in Plaintiffs are crystal clear that the primary duties of the ABM position are exempt management and administrative duties." (R. 37 at 15.) This argument, however, is misplaced. The job posts are not meant to prove Plaintiffs' substantive claim. Instead, they serve Plaintiffs' step one burden by simply illustrating that PNC's ABMs across a number of branches and states share the same duties and operate under the same objectives. Additionally, as stated above, the Court, at this stage, does not "resolve factual disputes or decide substantive issues going to the merits," and the Court cannot conclude as a matter of law that the job descriptions fall squarely within the exemption. *Larsen*, 2011 WL 3047484, at *1. Moreover, PNC's argument that its ABMs share the same primary managerial responsibilities, at the very least, cuts against its contention that they are not similarly situated.

Second, PNC argues that Plaintiffs' declarations are "cookie cutter" and are based on testimony from Plaintiffs who "worked as ABMs for very short periods of time almost three years ago." (R. 37 at 11, 16.) The Court interprets PNC's allegations as attacks on the declarants' credibility. The Court, however, does not assess "witness credibility" at this stage. *Nehmelman*, 822 F. Supp. 2d at 751. Instead, characterizing Plaintiffs' declarations as "cookie cutter" lends credence to Plaintiffs' claim that the ABMs are similarly situated.

11

In addition, PNC presents declarations from other ABMs to support their claims that there are ABMs "unlike the Plaintiffs and opt-in Plaintiffs" and that "ABMs in fact do perform exempt essential functions." (R. 37 at 18.) This is ineffective for two reasons. First, as noted earlier, "[t]he court," at this step, "does not . . . specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855-56 (citation omitted). Second, even if the Court were to consider PNC's opposing declarations, "whether . . . discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification." *Salmans v. Byron Udell & Assocs.*, No. 12 C 3452, 2013 WL 707992, at *4 (N.D Ill. Feb. 26, 2013) (citing *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 751 (N.D. Ill. 2010)). Indeed, "the rigorous comparison of day-to-day job responsibilities urged by defendants is inappropriate at the conditional certification stage." *Petersen v. Marsh USA, Inc.*, No. 10-1506, 2010 WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010) (citing *Smallwood*, 710 F. Supp. 2d at 751). As a result, PNC's declarations are futile in the Court's step one analysis.

Finally, PNC asserts that "Ms. Henn's complete testimony refutes the claim that PNC ABMs perform primarily non-exempt work." (R. 37 at 16.) Again, this is a merit-based defense, and, again, it fails. Further, PNC states that "[t]his testimony was not sufficient to warrant conditional certification in *Moore*, and it is not sufficient to warrant conditional certification in this case." (R. 37 at 7.) As described above, however, Plaintiffs do not simply rely on Ms. Henn's testimony. Rather, considering Plaintiffs' evidence in its entirety, Plaintiffs have met their minimal step one burden.

As a result, Plaintiffs meet their burden. Plaintiffs successfully provide modest factual support showing that PNC ABMs nationwide are similarly situated pursuant to the FLSA. *See*

*Tamas v. Family Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 4080649, at *3 (holding that the plaintiff's step one burden was met where "the claimants provide[d] evidence that they were subject to the same policy that misclassified them as exempt employees"); *see also Salmans*, 2013 WL 707992, at *2 ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA[.]") (emphasis in original). Thus, the Court, in its wide discretion, grants Plaintiffs' pre-discovery motion for step one, conditional certification.

## CONCLUSION

For the foregoing reasons, the Court, in its discretion, grants Plaintiffs' pre-discovery motion for conditional certification pursuant to the FLSA.

**DATED:  March 16, 2016**                                   **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge

13