**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DOMONIQUE NATASHA BRIGGS and SAMAR HASSAN, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | No. 15 Civ. 10447 |
| **-against-** | Hon. Amy J. St. Eve |
| **PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A.,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF SETTLEMENT,
<u>SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

I.      Factual Allegations ................................................................................................. 2

II.     Overview of Investigation, Litigation and Settlement Negotiations ................... 2

SUMMARY OF THE SETTLEMENT TERMS ............................................................. 4

I.      The Settlement Fund .............................................................................................. 4

II.     Eligible Employees ................................................................................................ 4

III.    Claim Procedure ..................................................................................................... 4

IV.     Release .................................................................................................................... 5

V.      Allocation Formula ................................................................................................ 6

VI.     Service Award ........................................................................................................ 7

VII.    Settlement Claims Administration ......................................................................... 7

VIII.   Attorneys' Fees and Litigation Costs .................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.      A One-Step Approval Process Is Standard for FLSA Settlements ...................... 8

II.     The Settlement Is Fair and Reasonable and Should Be Approved ...................... 9

III.    The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable ............. 12

IV.     Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable ......................... 16

        A.      The Court Should Award Attorneys' Fees From a Percentage of the Fund ......... 16

        B.      The Results and Benefits Conferred Upon the Class Justify the Fee Award ........ 18

        C.      Analysis of the Market for Legal Services Supports Plaintiffs' Request ............. 19

                1.      Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate
                        of Compensation in the Northern District of Illinois Market ................... 20

                2.      The Risk of Nonpayment Was Significant .............................................. 22

        D.      Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved
                Without a Cross-Check. ....................................................................................... 23

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ......................13

*In re Amino Acid Lysine Antitrust Litig.*,
  No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) .............................................17

*Anwar v. Transp. Sys., Inc.*,
  No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) ...........................................................................8

*Aros v. United Rentals, Inc.*,
  Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012) ....................................8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  792 F. Supp. 2d 1028 (N.D. Ill. 2011) ..................................................................................18

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................9, 10

*Beesley v. Int'l Paper Co.*,
  No. 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .................................................15

*Besic v. Byline Bank, Inc.*,
  No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015) .............................................................................8

*Blum v. Merrill Lynch & Co.*,
  No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016) ..............................................................................8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..............................................................................................................16

*Bozak v. Fedex Ground Package Sys., Inc.*,
  No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ........................................8, 12

*Burkholder v. City of Ft. Wayne*,
  750 F. Supp. 2d 990 (N.D. Ind. 2010) ...............................................................................9, 21

*Butler v. Am. Cable & Tel., LLC*,
  No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ...............................................9

*Campbell v. Advantage Sales & Mktg. LLC*,
  No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ...............................8, 17, 21

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) .................................................................................................17

*Chesemore v. Alliance Holdings, Inc.*,
    No. 09 Civ. 413, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014)......................................13, 14

*In re Cont'l Ill. Secs. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ..........................................................................................22

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ....................................................................................12, 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................20, 22, 23

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09 Civ. 3690, 2014 WL 1017515 (N.D. Ill. Mar. 17, 2014)..........................................7

*Dawson v. Pastrick*,
    600 F.2d 70 (7th Cir. 1979) ..............................................................................................9

*Dearaujo v. Regis Corp.*,
    No. 14 Civ. 1408, 2016 WL 3549473 (E.D. Cal. June 30, 2016)........................................19

*Dixon v. Zabka*,
    No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ...........................................8

*Espenscheid v. DirectSat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) ....................................................................................8, 13, 14

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ......................................................................................16, 17, 18

*Follansbee v. Discover Fin. Servs., Inc.*,
    No. 99 Civ. 3827, 2000 WL 804690 (N.D. Ill. June 21, 2000) ...........................................13

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*,
    No. 11 Civ. 592, 2013 WL 5745102 (W.D. Wis. Oct. 23, 2013) ..........................................9

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................................16

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ............................................................................................22

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ................................................................................17, 18

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013)......................................................................................................8

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000) ..........................................................................................18

*Goldsmith v. Tech. Solutions Co.*,
 No. 92 Civ. 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...........................22

*Guippone v. BH S & B Holdings, LLC*,
 No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................15

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
 280 F.R.D. 388 (N.D. Ill. 2011) ...............................................................................13

*Heekin v. Anthem, Inc.*,
 No. 05 Civ. 1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ............................23

*Hens v. Clientlogic Operating Corp.*,
 No. 05 Civ. 381, 2010 WL 5490833 (W.D.N.Y. Dec. 21, 2010) ............................11

*Jackson v. Go-Tane Servs., Inc.*,
 No. 99 Civ. 5686, 2001 WL 826867 (N.D. Ill. July 18, 2001) ...............................11

*Johnson v. Midwest Logistics Sys., Ltd.*,
 No. 11 Civ. 1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013)...........................14

*Kaplan v. Houlihan Smith & Co.*,
 No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) .......................16, 23

*Kifafi v. Hilton Hotels Ret. Plan*,
 999 F. Supp. 2d 88 (D.D.C. 2013) ............................................................................15

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
 No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016).................... *passim*

*Lynn's Food Stores, Inc. v. United States*,
 679 F.2d 1350 (11th Cir. 1982) ..................................................................................9

*Massiah v. MetroPlus Health Plan, Inc.*,
 No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ..........................13

*McCall v. First Tenn. Bank, N.A.*,
 No. 13 Civ. 386, 2014 WL 2159007 (M.D. Tenn. May 23, 2014)...........................10

*McDonnell v. Groupon, Inc.*,
 No. 14-9028 (N.D. Ill. Nov. 11, 2016) ...............................................................13, 21

*McKenna v. Champion Int'l Corp.*,
 747 F.2d 1211 (8th Cir. 1984) ....................................................................................8

v

*Ottaviano v. Home Depot, Inc., USA,*
    701 F. Supp. 2d 1005 (N.D. Ill. 2010) ........................................................11

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,*
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .........................15, 16

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) ...................................................................19

*Pierce v. Visteon Corp.,*
    791 F.3d 782 (7th Cir. 2015) ...................................................................18

*Powell v. Lakeside Behavioral Healthcare, Inc.,*
    No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011)........................8

*Prena v. BMO Fin. Corp.,*
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ...................8, 9, 17

*Primax Recoveries, Inc. v. Sevilla,*
    324 F.3d 544 (7th Cir. 2003) ...................................................................16

*Raymer v. Mollenhauer,*
    No. 10 Civ. 210, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011)...........................8

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ...................................................................19

*Reyes v. Altamarea Grp., LLC,*
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .........................16

*Roberts v. Apple Sauce, Inc.,*
    No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014).......................8, 9

*Rusin v. Chicago Tribune Co.,*
    No. 12 Civ. 1135 (N.D. Ill. June 26, 2013).................................................14, 21

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................23

*Sewell v. Bovis Lend Lease, Inc.,*
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).......................15

*Singleton v. Domino's Pizza, LLC,*
    976 F. Supp. 2d 665 (D. Md. 2013) ...........................................................15

*Skelton v. G.M. Corp.,*
    860 F.2d 250 (7th Cir. 1988) ...................................................................17

*Sukhnandan v. Royal Health Care of Long Island LLC*,
No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ...........................................14

*Summers v. UAL Corp. ESOP Comm.*,
No. 03 Civ. 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005).............................................11

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ....................................................................................16, 20, 22

*In re Sw. Airlines Voucher Litig.*,
No. 11 Civ. 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)...........................................15

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...........................................................................................19, 20

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ...........................................................................................17, 21

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) .....................................................................................20, 21, 22

*Tobin v. Beer Capitol Distrib. Inc.*,
No. 12 Civ. 274, 2012 WL 5197976 (E.D. Wis. Oct. 19, 2012) ...........................................12

*In re Trans Union Corp. Privacy Litig.*,
No. 00 Civ. 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) .............................................23

*Urnikis-Negro v. American Family Prop. Servs.*,
616 F.3d 665 (7th Cir. 2010) .................................................................................................19

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).........................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005).....................................................................................................17

*Watson v. BMO Fin. Corp.*,
No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) .....................................................................8, 22

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) .................................................................................................23

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .................................................................................................17

*Woods v. N.Y. Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) ...................................................................................................9

*Zolkos v. Scriptfleet, Inc.*,
  No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) .......................................12, 22

**Statutes**

29 U.S.C. § 216(b) ...............................................................................................................17

**Other Authorities**

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of
  Incentive Payments to Named Plaintiffs in Employment Discrimination Class
  Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ................................................................12

4 Robert Newberg, *Newberg on Class Actions* § 14.6 (4th ed. 2002) .........................................22

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
  Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006)...................................14

# INTRODUCTION

Plaintiffs, Domonique Natasha Briggs and Samar Hassan ("Named Plaintiffs"), and Defendants, PNC Financial Services Group, Inc. and PNC Bank, N.A. ("Defendants"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis. The settlement, which followed a thorough investigation, motion practice, and substantial discovery, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations by experienced counsel, was assisted by a private mediator, and provides good value to the workers whom it will benefit.

Plaintiffs respectfully request an order: (1) approving the $6,000,000.00 settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs ("Swartz Decl.");[1] (2) approving the proposed Official Court Notices of Settlement and Opportunity to Join Collective Action ("Settlement Notices") (attached as Exhibit B to the Settlement Agreement) and directing their distribution; (3) approving service awards of $12,500.00 each to the Named Plaintiffs; (4) approving Plaintiffs' request for one-third of the settlement for attorneys' fees plus reimbursement of costs and expenses; (5) approving the Settlement Administrator's fees and costs, and (6) incorporating the terms of the Settlement Agreement.[2]

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement. The Swartz Declaration is attached to this memorandum of law as Exhibit 1.

[2]     A Proposed Order is attached as Exhibit A to the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Plaintiffs are former employees of Defendants who worked as Assistant Branch Managers ("ABMs").  Briggs worked as an ABM at Defendants' branches located in Chicago, Illinois, from approximately August 2012 to May 2013.  Hassan worked as an ABM at Defendants' branch in Oakton, Virginia, from approximately June 2011 to March 2013.  ECF No. 1 ("Compl.") ¶¶ 15, 22.  Plaintiffs allege that Defendants violated the FLSA by improperly classifying them, and other ABMs, as exempt from federal and state overtime requirements and failing to pay them overtime wages.  Defendants deny that they committed any wrongdoing or violated any federal, state or local laws pertaining to payment of wages or hours worked and vigorously disputed the claims asserted in the litigation.

### II.    Overview of Investigation, Litigation and Settlement Negotiations

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶ 14.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential class and collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification.  *Id.* ¶ 15.  Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs, including job descriptions, pay records, and corporate documents.  *Id.* ¶ 16.  Plaintiffs' Counsel also conducted in-depth interviews of multiple ABMs.  *Id.* ¶ 17.

As a result of their investigation, on November 19, 2015, Named Plaintiffs filed their Collective and Class Action Complaint.  *See* ECF No. 1.  Shortly thereafter, on December 18, 2015, Plaintiffs moved for Court-authorized notice pursuant to Section 216(b) of the FLSA, ECF Nos. 23-26, which the Court granted on March 16, 2016, ECF No. 45.  Notice to ABMs was sent on May 24, 2016, and 620 ABMs working at PNC branches in 17 states joined the litigation.

Swartz Decl. ¶ 18.

The Parties then engaged in discovery. Plaintiffs interviewed approximately 299 of the ABMs who had opted-in. *Id.* ¶ 19. Plaintiffs also propounded 55 discovery requests, and in response Defendants produced over 6,800 pages of documents. *Id.* ¶ 20. In turn, Defendants propounded discovery requests on three ABMs, including Named Plaintiffs Briggs and Hassan, and Plaintiffs responded to those requests. *Id.* ¶ 21. The Parties also conferred extensively over ESI discovery and the scope of opt-in discovery, and noticed multiple depositions (which were not taken because of the Parties' agreement to explore settlement). *Id.* ¶ 22.

During this time period, the Parties discussed the potential for settlement and eventually agreed to mediate their claims in an attempt to resolve their dispute without further litigation. *Id.* ¶ 23. On August 11, 2016, the Court granted a stay of the litigation pending the result of the mediation. ECF No. 94.

The Parties then engaged in an informal exchange of information necessary for mediation. Swartz Decl. ¶ 24. Defendants produced data to allow the Parties to calculate damages, including data showing the number of potential class members in the job title, salaries, and weeks worked. *Id.* ¶ 25. Plaintiffs' Counsel analyzed this data and constructed a damages model. *Id.* ¶ 26. The Parties then drafted mediation briefs setting forth their respective positions as to liability and damages, and exchanged their briefs so that each side could evaluate the strengths of the other's claims. *Id.* ¶ 27.

On October 13, 2016, the Parties attended private mediation in Chicago, Illinois, with Michael E. Dickstein, a nationally well-regarded mediator who is experienced in employment law class and collective actions. *Id.* ¶ 28. Despite a full day of mediation, the Parties did not reach an agreement, but continued to negotiate over the course of the next month. *Id.* ¶ 29.

After reaching an agreement in principle on November 14, 2016, the Parties negotiated over and finalized the terms of the settlement, which were memorialized in a formal Settlement Agreement executed by the Parties on or about November 28, 2016. *Id.* ¶ 30.

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Fund

The Settlement Agreement establishes a fund of $6,000,000.00 (the "Fund") from which Class Members can claim settlement awards. Ex. A ¶ 1.10. The Fund covers any Court-approved service awards to Plaintiffs, any Court-approved attorneys' fees and costs, and the settlement claims administrator's ("Settlement Administrator's") fees and costs, in addition to class member awards. *Id.*

### II.    Eligible Employees

Eligible Settlement Class Members are any and all current and former employees employed by PNC in the position of ABM who:

> (1) have filed a consent to join the Litigation, have not been dismissed from the Litigation or withdrawn their consent to join, and worked at any time during the three years prior to the date that ABM opted-in to this Litigation ("Opt-Ins"); or
>
> (2) did not previously file a consent to join the Litigation and worked in Illinois from November 19, 2012 to December 1, 2016; or in any other state from December 1, 2013 to December 1, 2016 ("Non-Opt-Ins").

*Id.* ¶ 1.7.

### III.   Claim Procedure

The Settlement Administrator will mail notice of the settlement, and a settlement check, to all Eligible Settlement Class Members within sixty days after the Approval Order (assuming no appeal). *Id.* ¶ 2.9. The proposed Settlement Notice will inform Eligible Settlement Class Members of the terms of the settlement, their individual settlement allocations (which the

Settlement Administrator will calculate based on Defendants' data), and the scope of the release. *See id.* at Ex. B (Settlement Notices). The Settlement Administrator will take all reasonable steps to obtain the correct address of Eligible Settlement Class Members for whom a Settlement Notice is returned undeliverable and shall make all reasonable attempts to ensure that the Settlement Notice and Settlement Check are successfully delivered. *Id.* ¶ 2.14.

Eligible Settlement Class Members will have ninety-three days to cash their Settlement Checks (the "Acceptance Period"). *Id.* ¶ 2.11. If a Eligible Settlement Class Member has not cashed his or her check within thirty-five days after it is received, the Settlement Administrator will send that Class Member a reminder postcard by mail and email (where available) reminding them of the expiration of the Acceptance Period. *Id.* Thirty days before the close of the Acceptance Period, Plaintiffs' Counsel will attempt to contact Eligible Settlement Class Members who have not cashed their Settlement Check, and again remind them of their eligibility to do so. *Id.* ¶ 2.12. Defendants, at their discretion, may also send current employees a communication encouraging them to participate in the Settlement. *Id.* ¶ 2.13.

## IV.    **Release**

All Participating Settlement Collective Members will release claims against PNC Financial Services Group, Inc. and PNC Bank N.A., and related entities, whether known or unknown, that were asserted in this case or that could have been asserted in this case under the FLSA or state wage and hour law, based on the allegations in the Complaint, that accrued while the Participating Settlement Collective Member worked for PNC as an ABM, including any claims for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws in the District of Columbia, Illinois,

Maryland, Missouri, New Jersey, Pennsylvania, Ohio, and Wisconsin and all other state and local wage and hour laws, relating to their employment at PNC as an ABM. *Id.* ¶ 4.1. The time period for the release is: (1) the date three years prior to the date that the ABM opted-in to this case to December 1, 2016, if the ABM had previously filed a consent to join this case; (2) November 19, 2012 to December 1, 2016 if the ABM was employed in Illinois; and (3) December 1, 2013 to December 1, 2016, if the ABM was employed in any other state. *Id.*

An Eligible Settlement Class Member who does not timely cash their Settlement Check will not release any claims. *Id.* ¶ 4.2.

## V.     <u>Allocation Formula</u>

Eligible Settlement Class Members will be eligible for a settlement payment pursuant to an allocation formula based on the number of weeks they worked during the relevant period and whether they opted-in to the case. *Id.* ¶ 3.4. Each Eligible Settlement Class Member shall be assigned one point for each week in which the individual was employed during an Eligible Work Week, except that Eligible Class Members who are Opt-Ins (including the Named Plaintiffs) will be assigned 1.3 points for each Eligible Work Week. *Id.* 3.4(D)(1)-(2). The Settlement Administrator will add all points for all Eligible Settlement Class Members together to obtain the "Denominator". *Id.* 3.4(3). The Settlement Administrator then will divide the number of points for each Eligible Settlement Class Member by the Denominator to obtain each Eligible Settlement Class Member's "Portion of the Net Settlement Fund." *Id.* The Settlement Administrator next will multiply each Eligible Settlement Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Class Member's Settlement Amount. *Id.* Finally, the Settlement Administrator will distribute a check to each Participating Settlement Class Member minus applicable employee payroll taxes and

withholdings.  *Id*. ¶ 3.4(F).  For tax purposes, 50% of the payment to each Participating Class Member will be treated as back wages, subject to payroll taxes and withholdings, and 50% will be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.  *Id.*

Any Settlement Checks not cashed within the appointed period will become void and shall become a part of a reversion to Defendants.  *Id*.  ¶ 3.1(C).

## VI.    Service Award

The Settlement Agreement provides that, with Court approval, Named Plaintiffs will each receive a $12,500.00 service award in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took to do so.  *Id*. ¶ 3.3.

## VII.    Settlement Claims Administration

The Parties have retained Rust Consulting, Inc. ("Rust"), a wage and hour settlement administrator, to serve as the Settlement Administrator.  Swartz Decl. ¶ 31.  Courts have routinely approved Rust as a settlement administrator in class actions.  *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 Civ. 3690, 2014 WL 1017515, at *3 (N.D. Ill. Mar. 17, 2014) (approving Rust as claims administrator).  The Settlement Administrator's fees of a maximum of $20,000.00 will be paid from the Fund.  Ex. A ¶ 1.10; Swartz Decl. ¶ 32.

## VIII.    Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive $2,000,000.00 (one-third of the $6,000,000.00 settlement) as attorneys' fees, plus reimbursement of $35,819.29 which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter (including sending the 216(b) notice).  *See* Ex. A ¶ 3.2; Swartz Decl. ¶ 44 & Ex. H; Declaration of Gregg I. Shavitz ("Shavitz Decl.," attached to this memorandum of law as Exhibit 2) at 6; Declaration of Douglas M. Werman ("Werman

Decl.," attached to this memorandum of law as Exhibit 3) ¶ 15.

## ARGUMENT

## I.  A One-Step Approval Process Is Standard for FLSA Settlements.

In the Seventh Circuit, and throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include Rule 23 classes.[3]  This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions.  Collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action.  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA.").  Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).  Accordingly, courts do not apply the

---

[3]     *See, e.g.*, *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements.); *Watson v. BMO Fin. Corp.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (attached as Exhibit D); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015) (attached as Exhibit E); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011); *see also Blum v. Merrill Lynch & Co.*, No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016) (attached as Exhibit F); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) (attached as Exhibit G) *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011).

exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions); *Koszyk*, 2016 WL 5109196, at *1. There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena*, 2015 WL 2344949, at *1; *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

## II.     The Settlement Is Fair and Reasonable and Should Be Approved.

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11 Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*, 2011 WL 4729789, at *8. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts*, 2014 WL 4804252, at *2. "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case easily meets the standard for approval. The settlement was the

result of pre-suit investigation, extensive discovery, motion practice, and substantial arm's-length negotiations.  Swartz Decl. ¶¶ 14-30.  Recognizing the uncertain legal and factual issues involved, the Parties reached the settlement pending before the Court after private mediation before an experienced mediator.  *Id.* ¶ 28.

The settlement amount of $6,000,000.00 is substantial, especially in light of the considerable risk that Plaintiffs face.  First, Plaintiffs calculations show that the average net settlement award will be approximately $2,010.87 (after fees, service awards, and costs (including settlement administration costs) are netted out).  *Id.* ¶ 34.  By Plaintiffs' estimate, this is a substantial percentage of the class' lost wages.  *Id.* ¶ 35.  However, by Defendants' estimate, even if Plaintiffs were to establish at trial that ABMs should have been classified as non-exempt, the lost wages of the class would be much smaller.

Second, there was a risk that Plaintiffs would not succeed on class certification or maintaining a collective through trial.  Defendants would likely argue that the differences among various branches and other individualized questions precluded class certification, or would warrant decertification of a collective, if certified.  Although Plaintiffs disagree, defendants have prevailed on such arguments.  *See, e.g.*, *Beckman*, 293 F.R.D. at 480 (collecting misclassification cases where courts have decertified FLSA collectives).

Third, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  The status of ABMs under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendants' position.  For example, in *McCall v. First Tenn. Bank, N.A.*, a court found that a teller supervisor was exempt because of his supervision of tellers even though he spent a significant amount of time performing non-exempt teller duties.  No. 13 Civ. 386, 2014 WL 2159007, at *1, *4-9 (M.D. Tenn. May 23, 2014).

Although Plaintiffs believe this case is distinguishable, Defendants would likely argue that ABMs are similar to the teller supervisors, warranting a similar outcome.[4] While Plaintiffs believe that they could ultimately establish Defendants' liability (and prevail on class certification), this would require significant factual development.

The proposed allocation of the settlement also is reasonable. It reflects a proportion of damages owed to Eligible Settlement Class Members based on the number of weeks they worked for Defendants, which is a reasonable approximation of each Eligible Settlement Collective Member's damages, given the evidence that ABMs tended to work similar hours. It allocates slightly more to Eligible Settlement Class Members who opted-in to the settlement, reflecting that their claims were stronger (given that they are part of the case regardless of whether any class certification motion is successful) and that by joining the suit they took on additional risks and obligations. Ex. A ¶ 3.4(D) (allocation plan); *see Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis"); *see also Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service).

The Court should also approve the proposed Settlement Notices. *See* Ex. A (Settlement Agreement) at Ex. B (Settlement Notices). The proposed Settlement Notices inform Eligible Settlement Class Members of the terms of the settlement, including the allocation formula, how they may participate (or not participate), the settlement payment to which they are entitled, the

---

[4] Other courts in the Northern District of Illinois have similarly rejected assistant manager claims. *See, e.g.*, *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1007-10 (N.D. Ill. 2010) (dismissing claims of assistant store managers and finding they were properly classified as exempt under Illinois wage and hour laws); *Jackson v. Go-Tane Servs., Inc.*, No. 99 Civ. 5686, 2001 WL 826867, at *3-4 (N.D. Ill. July 18, 2001) (granting summary judgment to employer on claims of certain assistant managers).

release, and the request for attorneys' fees and costs.  *Id.*; *see also Koszyk*, 2016 WL 5109196, at

*2 (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos*

*v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same);

*Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct.

19, 2012) (approving class notice that, *inter alia*, described nature of action and claims and

options in the settlement); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing

notice of settlement terms and options facing class).

### III.  The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable.

The Named Plaintiffs request approval of service awards of $12,500.00 each.  The

Service Awards that they request are reasonable given the significant contributions they made to

advance the prosecution and resolution of the lawsuit.  Named plaintiffs in class action lawsuits

play a crucial role in bringing justice to those who would otherwise be hidden from judicial

scrutiny.  "Because a named plaintiff is an essential ingredient of any class action, an incentive

award is appropriate if it is necessary to induce an individual to participate in the suit."  *Cook v.

Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  This is especially true in employment litigation.

*See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y.

June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee

of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the

class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks

omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination

of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10

Emp. Rts. & Emp. Pol'y J. 395 (2006).

Service awards serve the important purpose of "compensate[ing] plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *see also Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016; *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing incentive awards' importance). Service awards are commonly awarded to those who serve the class's interests. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Named Plaintiffs satisfy all three factors.

First, Named Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. They participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, responded to document requests and interrogatories, and submitted declarations in support of Plaintiffs conditional certification motion (which also were utilized extensively during the mediation). Courts in this Circuit and others have approved comparable incentive awards for similar activities. *See, e.g.*, *McDonnell v. Groupon, Inc.*, No. 14-9028 (N.D. Ill. Nov. 11, 2016)

(attached as Exhibit B) (awarding two class representatives $12,500.00 each in FLSA and IMWL overtime collective and class action); *Chesemore*, 2014 WL 4415919, at \*5, \*12 (approving $10,000.00 and $25,000.00 awards for, *inter alia*, submitting to discovery and participating in settlement discussions and noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000.00 to $25,000.00).[5]  These actions have resulted in substantial benefit to the class, leading to an overall gross recovery of $6,000,000.00, which results in an estimated net average award of $2,010.87 per Eligible Settlement Class Member.  Swartz Decl. ¶¶ 33-34.

Second, Named Plaintiffs undertook substantial direct and indirect risk.  They agreed to bring the action in their names, to draft and sign declarations on penalty of perjury, to be deposed, and to testify if there was a trial.  *Id.* ¶ 37.  In so doing, they assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees."  *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted).  "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks."  *Id.*; *accord Koszyk*, 2016 WL 5109196, at \*3.

Although Plaintiffs were no longer employed by Defendants when they joined the Lawsuit, they merit recognition for risking retaliation from future employers for the benefit of all

---

[5]  *See also Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at \*5-6 (S.D. Ohio May 24, 2013) (approving a service award of $12,500 for the actions and efforts of the named plaintiff in securing other class members' recoveries, which ranged from $260.00 to $1,000.00 and were allocated from a gross settlement fund of $452,380); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at \*16 (S.D.N.Y. July 31, 2014) ($10,000.00 awards where, *inter alia*, "[p]laintiffs provided counsel with relevant documents . . . [and] assisted counsel in preparing for mediation and settlement discussions"); *Rusin v. Chicago Tribune Co.*, No. 12 Civ. 1135 (N.D. Ill. June 26, 2013) (attached as Exhibit C) (in FLSA case, approving $10,000.00 incentive award to named plaintiff); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding that the mean incentive award in employment class actions is approximately $12,000.00).

Class Members. *See Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against a prior employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references[.]").

Third, Named Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assist in the preparation and review of the complaint, providing declarations in support of Plaintiffs' collective certification motion, discovery, and helping prepare for the mediation. Swartz Decl. ¶ 38; *see Koszyk*, 2016 WL 5109196, at *3; *see also See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained contributions" to the litigation, which resulted in a sizable ERISA common fund); *In re Sw. Airlines Voucher Litig.*, No. 11 Civ. 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014) (approving service

award in part because "there is a solid basis to believe that discovery," in which named plaintiffs actively participated, "improved the prospects for a favorable settlement").

The requested Service Awards amount to approximately 0.41% of the total recovery, which is a reasonable percentage. Swartz Decl. ¶ 39; *see Koszyk*, 2016 WL 5109196, at *1, *3 (approving awards of approximately 2.5%); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, at*92011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) (approving awards of approximately 16.6%); *Parker*, 2010 WL 532960, at *2 (11% recovery reasonable given "value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank*, 228 F.R.D. at 187 (approximately 8.4% of settlement).

## IV. __Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.__

### A. __The Court Should Award Attorneys' Fees From a Percentage of the Fund.__

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit

is to use the percentage of the fund method in common fund cases like this one.  *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell*, 2012 WL 1424417, at *2 (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).[6]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ."  *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564.  Here, the settlement releases Named Plaintiffs' and Participating Settlement Class Members' statutory claims to fees under the FLSA and state wage and hour laws.[7]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method.  First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win."  *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court

---

[6]    The trend in other circuits is to use the percentage of the fund method as well.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[7]    *See, e.g.*, 29 U.S.C. § 216(b).

from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34

F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of

administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983) (fee requests "should not result in a second major litigation")). Courts in this district

routinely apply the percentage method to common fund settlements and have noted the

advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax

Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not

need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same

conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method,

including judicial efficiency and an "efficient check on the attorney's judgment" in economic

decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction

[with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling

district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v.

Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).[8]

    **B.**    **The Results and Benefits Conferred Upon the Class Justify the Fee Award.**

    This Settlement will provide the Class with a substantial cash payment. The Settlement

Agreement provides that Defendants will pay a maximum settlement amount of $6,000,000.00 to

settle all claims against them. *See* Swartz Decl. ¶ 40. This is well within the range of reasonable

recoveries for the Class. *Id.*

---

[8]    The Seventh Circuit's opinion in *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), has no impact on long-standing Seventh Circuit jurisprudence that in class settlements, class counsel should be awarded a portion of the fund that their work creates. In *Pierce*, the Court addressed a unique situation where a lawyer obtained a judgment in his or her client's favor, recovered an attorneys' fee on a lodestar basis that the court found to be a reasonable fee, and then sought a second fee recovery on a percentage of the fund basis. *Id.* at 783-88.

The settlement represents significant value given the attendant risks of litigation. *Id.* ¶ 41. By Plaintiffs' estimation, the $6,000,000.00 guaranteed settlement amount represents approximately 81% of the class' lost wages, based upon the estimate that each Eligible Class Member worked an average of five overtime hours per week, which Defendants' records suggest may be considerably higher than the actual average weekly hours. *Id.* ¶ 42.[9]

The Settlement also does not present any signs of collusion. It was vigorously negotiated with the help of a well-respected class action employment law mediator. *Id.* ¶¶ 28-30; *see also Dearaujo v. Regis Corp.*, No. 14 Civ. 1408, 2016 WL 3549473, at *10 (E.D. Cal. June 30, 2016) (noting court was "reassured" by presence of "experienced third-party neutral" Michael Dickstein). All Eligible Settlement Class Members' awards will be calculated according to the same allocation formula. Swartz Decl. ¶ 35. There is no "clear-sailing" provision. *Id.*; *cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

Moreover, litigation would pose significant risks. While Plaintiffs believe they would prevail on their claims, Defendants have asserted numerous defenses as to liability and damages. If Plaintiffs continued to litigate, they would have to contend with unfavorable decisions issued by district courts in this Circuit as to the status of ABMs as exempt and class certification.

## C. Analysis of the Market for Legal Services Supports Plaintiffs' Request.

In awarding fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *Koszyk*, 2016 WL 5109196, at *3. District courts "undertake an analysis of the terms to which the

---

[9]    This estimated recovery is made according to the fluctuating work week, pursuant to *Urnikis-Negro v. American Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010).

private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases[.]" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

1. **Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market.**

The attorneys' fees that Plaintiffs' Counsel request are based on the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based on, *inter alia*, "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiffs' Counsel are experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this one, and are justified in seeking compensation in the form of one-third of any potential settlement (plus costs) for their efforts. Swartz Decl. ¶¶ 4-13; Shavitz Decl. ¶¶ 4-12; Werman Decl. ¶¶ 2-12.

Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery, plus costs. Swartz Decl. ¶ 43. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had

"established[ed] a fee structure at the outset of [the] lawsuit"); *see also Koszyk*, 2016 WL 5109196, at *4.

It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. *See Koszyk*, 2016 WL 5109196, at *4; Werman Decl. ¶¶ 13-14. In addition, one-third is the standard contingent percentage that employment lawyers in the District charge individual clients. *Id.* These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforce that Plaintiffs' Counsel request the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

Courts regularly agree that "a counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action." *Burkholder*, 750 F. Supp. 2d at 997 (internal citation and quotation marks omitted, collecting cases); *see Koszyk*, 2016 WL 5109196, at *4 (approving award of one-third settlement plus costs in wage and hour litigation); *McDonnell*, No. 14-9028 (attached as Exhibit B) (same); *Rusin*, No. 12 Civ. 1135 (attached as Exhibit C) (same); *Campbell*, 2012 WL 1424417, at *2 (same). These awards of "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees [Plaintiffs propose should be] awarded by the [Court]." *Taubenfeld*, 415 F.3d at 600.

Here, Plaintiffs' Counsel's requested fee is well within the market rate for common fund wage and hour actions within the Northern District of Illinois. *See id.* at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund);

*Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Koszyk*, 2016 WL 5109196, at *4 (awarding fees as one-third of fund); *Watson*, No. 15 Civ. 11881 (attached as Exhibit D) (same); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (same); *Zolkos*, 2015 WL 4275540, at *3 (same); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 4 Robert Newberg, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third[.]").

**2.    The Risk of Nonpayment Was Significant.**

Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced.  At the outset of the representation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs.  *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).  Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid.  *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").  Should the Court reject the settlement, Plaintiffs' Counsel also face significant legal hurdles in establishing certification and proving liability.  *See* Argument, *supra* § II.  As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost [and still could lose] everything" they invested.  *In re Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992); *Koszyk*, 2016 WL 5109196, at *4.

**D. Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check.**

Plaintiffs' Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Class Members is substantial, the entire Net Settlement Fund is available to Eligible Settlement Class Members without the need for them to submit claim forms, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 850 ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009). As explained above, Plaintiffs' Counsel's substantial work to date has "bought" a significant recovery for Class Members, the Court need not analyze Plaintiffs' Counsel's lodestar.[10]

---

[10] If requested by the Court, Plaintiffs' counsel will submit their lodestar for review. But further illustrating that the lodestar is an ineffective benchmark for reasonableness, recent opinions from the Northern District of Illinois have rejected the lodestar cross-check *even while finding the fees in question to be reasonable. See, e.g., Kaplan*, 2014 WL 2808801, at *3-4 (rejecting plaintiffs' cross-check lodestar arguments as "absurd" but finding contingency rate reasonable because it was "well within the range of market prices"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 849 ("Ultimately, the Court sees no utility in considering this somewhat-

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order substantially similar to the Proposed Order attached hereto: (1) approving the $6,000,000.00 settlement as a fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release; (2) approving the proposed Settlement Notices and direct their distribution; (3) approving a service award of $12,500.00 each to Named Plaintiffs for their service to the collective; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and additional costs and litigation expenses of $35,819.29; (5) approving the Settlement Administrator's fees and costs; (6) incorporating the terms of the Settlement Agreement; (7) dismissing this case without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

Dated: November 28, 2016
New York, New York

Respectfully submitted,

*/s/* Justin M. Swartz
**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Christopher McNerney (admitted *pro hac vice*)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

Paul W. Mollica
161 North Clark Street
Suite 1600
Chicago, Illinois 60601
Telephone: (312) 809-7010
Facsimile: (312) 809-7911

---

arbitrary (and under-vetted) [lodestar] calculation, and thus disregards this evidence for purposes of this fee petition.").

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan Stern (admitted *pro hac vice*)
1515 S. Federal Highway
Boca Raton, Florida 33432
Telephone:  (561) 447-8888
Facsimile:  (561) 447-8831

**WERMAN SALAS P.C.**
Douglas M. Werman
77 West Washington Street
Suite 1402
Chicago, IL 60602
Telephone:  (312) 419-1008
Facsimile:  (312) 419-1025

*Attorneys for Plaintiffs and the*
*Putative Settlement Class*

## CERTIFICATION OF SERVICE

I hereby certify that on **November 28, 2016** a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all Parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ Justin M. Swartz*
Justin M. Swartz