THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMONIQUE NATASHA BRIGGS and SAMAR HASSAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PNC FINANCIAL SERVICES GROUP, INC., and PNC BANK, N.A.,<br><br>Defendants. | Case No. 1:15-cv-10447<br><br>Judge Amy J. St. Eve |

**ORDER APPROVING SETTLEMENT,
SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiffs' Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval (the "Memorandum"), and the Declaration of Justin M. Swartz ("Swartz Decl.") and supporting declarations and exhibits, the Court hereby finds as follows:

**The Settlement Is Approved**

1. The Court approves and incorporates by reference all of the definitions contained in the Settlement Agreement.

2. The Court hereby approves the Six Million and No/100ths Dollars ($6,000,000.00) settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11

Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

3. Here, settlement meets the standard for approval. The settlement was the result of vigorously contested litigation with extensive formal and informal discovery, a motion for collective conditional certification, and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after attending private mediation before an experienced mediator. At all times during the settlement negotiation process, negotiations were conducted at arm's length.

**The Settlement Procedure Is Approved**

4. A one-step settlement approval process is appropriate. *See, e.g.*, *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements."); *Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF Nos. 34, 39 (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*,

133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

5. The Settlement Notices attached to the Settlement Agreement as Exhibit B are approved. Plaintiffs shall make any necessary corrections to the dates in the Settlement Notices. The Settlement Notices sufficiently inform Opt-In and Non-Opt-In Eligible Settlement Class Members of the terms of the settlement, including how Class Members may participate (or not participate), the estimated amount to which they are entitled under the allocation formula, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class).

6. The plan for sending the Settlement Notice as proposed by Plaintiffs is approved.

**The Service Awards Are Approved**

7. Service awards of Twelve Thousand Five Hundred and No/100ths Dollars ($12,500.00) each to Named Plaintiffs are approved. The amount shall be paid from the Gross Settlement Amount. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

8. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards

are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

9. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Plaintiffs satisfy all three factors.

10. First, the Named Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members. They participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, responded to document requests and interrogatories, and submitted declarations in support of Plaintiffs conditional certification motion (which also were utilized extensively during the mediation). Courts in this Circuit and others have approved comparable incentive awards for similar activities. *See, e.g.*, *Chesemore*, 2014 WL 4415919, at *5, *12 (approving $10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions and noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) (approving a service award of $12,500 for the actions and efforts of the named plaintiff in securing other class members' recoveries, which ranged from $260 to $1,000 and were allocated

5

from a gross settlement fund of $452,380); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) ($10,000 awards where, *inter alia*, "[p]laintiffs provided counsel with relevant documents and assisted counsel in preparing for mediation and settlement discussions"); *Rusin v. Chicago Tribune Co.*, No. 12 Civ. 1135 (N.D. Ill. June 26, 2013), ECF No. 41-1 (in FLSA case, approving $10,000 incentive award to named plaintiff); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding that the mean incentive award in employment class actions is approximately $12,000). These actions have resulted in substantial benefit to the class.

11. Second, the Named Plaintiffs undertook substantial direct and indirect risk. The Named Plaintiffs agreed to bring the action in their name, to draft and sign declarations on penalty of perjury, to be deposed eventually, and to testify if there was a trial. In so doing, Plaintiffs and assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). "The incentive reward is designed to compensate [them] for bearing these risks." *Id*.

12. Third, the Named Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assist in the preparation and review of the complaint, providing declarations in support of Plaintiffs' collective certification motion, and helping prepare for the mediation. *See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained contributions" to the

litigation, which resulted in a sizable ERISA common fund); *In re Sw. Airlines Voucher Litig.*, No. 11 Civ. 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014) (approving service award in part because "there is a solid basis to believe that discovery," in which named plaintiffs actively participated, "improved the prospects for a favorable settlement").

13. Accordingly, service awards of $12,500.00 each to Named Plaintiffs Domonique Natasha Briggs and Samar Hassan for their service to the collective and class are approved.

### Fees and Costs of the Settlement Administrator and Attorneys Are Approved

14. The Court approves of the Settlement Administrator's fees and costs of no more than Twenty Thousand and No/100ths Dollars ($20,000.00).

15. The Court grants Plaintiffs' Counsel's request for one-third of the settlement, Two Million and No/100ths Dollars ($2,000,000.00), as attorneys' fees.

16. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

17. Plaintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of*

7

*Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiffs' Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the class and collective.

18. Before initiating this litigation Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

19. It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

20. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Koszyk*,

8

2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 3 Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

21. Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiffs' Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

22. Plaintiffs' Counsel's request for reimbursement of Thirty-Five Thousand Eight Hundred and Nineteen and 29/100ths Dollars ($35,819.29) in actual out-of-pocket expenses incurred in prosecuting this case, including costs for case-related travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees, is granted. The Court finds these costs to be reasonably incurred.

**Dismissal and Post-Judgment Procedure**

23. This case is dismissed without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

24. The Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

25. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 29th day of November, 2016

_____
Honorable Amy J. St. Eve
United States District Judge